FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION  2018 DEC 17 PM 3: 03

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 6:18-cv-2147-ORL-22TBS |
| | ) |
| MARCGENSON MARC; TIANA CHARACTER; | ) |
| LENORRIS LAMOUTE; DOSULD PIERRE; | ) |
| SHIRLEEN THALES; ADVANCED TAX | ) |
| SERVICES, INC.; GENSON FINANCIAL | ) |
| GROUP, LLC; and CHARACTER FINANCIAL | ) |
| SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Marcgenson Marc, Tiana

Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc.,

Genson Financial Group, LLC, and Character Financial Solutions, LLC, alleges the following:

1.      This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre,

Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character

Financial Solutions, LLC, and anyone in active concert or participation with them, from:

> a.   acting as federal tax return preparers or requesting, assisting in, or
>      directing the preparation or filing of federal tax returns, amended
>      returns, or other related documents or forms for any person or entity
>      other than themselves;
>
> b.   preparing or assisting in preparing federal tax returns that they know
>      or reasonably should know would result in an understatement of tax
>      liability or the overstatement of federal tax refund(s) as penalized by
>      26 U.S.C. § 6694;

c.  owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

d.  training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

e.  maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

f.  engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

g.  engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC to disgorge to the United States the gross receipts that Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC received (in the form of tax preparation fees) for the preparation of federal tax returns.

## Authorization

2.     This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because several of the Defendants reside in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.      Marcgenson Marc resides in Coconut Creek, Florida.  Marc has been preparing tax returns for compensation since at least 2013.  Marc is employed as a business specialist at a bank.

6.      Tiana Character resides in Orlando, Florida. Character has been preparing tax returns for compensation since at least 2010.  Character has been preparing tax returns at Advanced Tax Services since at least 2015.

7.      LeNorris LaMoute resides in Leesburg, Florida. LaMoute has been preparing tax returns for compensation at Advanced Tax Services since at least 2015.

8.      Dosuld Pierre resides in Gainesville, Florida. Pierre has been preparing tax returns for compensation at Advanced Tax Services since at least 2015.

9.      Shirleen Thales resides in Gainesville, Florida. Thales has been preparing tax returns for compensation at Advanced Tax Services since at least 2018.

10.     Advanced Tax Services, Inc. is a tax return preparation business in Florida doing business under the name Advanced Tax Services.

11.     On or about February 3, 2012, Marcgenson Marc incorporated Advanced Tax Services, Inc., in Florida.  Marc was initially the CEO of Advanced Tax Services, Inc. Two other

3

individuals were identified as the president and vice president. On or about March 5, 2013, Marc

filed an Annual Report for Advanced Tax Services, Inc., identifying himself as the president and

secretary, and identifying two other individuals as vice presidents. On or about November 27,

2013, Marc, identifying himself as the "Owner, CEO" of Advanced Tax Services, Inc., amended

the officers and directors of Advanced Tax Services, Inc., removing himself as president and

secretary, removing the two other individuals identified as vice presidents, and replacing these

officers and directors with Genson Financial Group, LLC as president, secretary, and treasurer.

According to the Annual Report that Marc, as "Owner" of Advanced Tax Services, Inc., filed on

or about April 6, 2018, Genson Financial Group, LLC is the president, treasurer, and secretary of

Advanced Tax Services, Inc.  Marc serves as the registered agent of Advanced Tax Services,

Inc., which lists its business address as 5212 W. Colonial Dr., Orlando, FL 32808.

12.     On or about November 25, 2013, Marc and two other individuals (who also

served as vice presidents of Advance Tax Services, Inc. in 2013) incorporated Genson Financial

Group, LLC in Florida.  According to the amended Annual Report that Marc, as Manager of

Genson Financial Group, LLC, filed on June 13, 2018, Marc is the sole manager of Genson

Financial Group, LLC.  Marc serves as the registered agent of Genson Financial Group, LLC,

which lists its business address as 5212 W. Colonial Dr., Orlando, FL 32808.

13.     Marc, individually or through Advanced Tax Services, Inc. and/or Genson

Financial Group, LLC, operates tax return preparation stores doing business under the name

Advanced Tax Services.

14.     Marc, individually or through Advanced Tax Services, Inc. and/or Genson

Financial Group, LLC, has, since 2013, operated up to eight tax preparation stores in Gainesville,

Orlando, Eatonville, Kissimmee, Pensacola, and Sanford, Florida. Marc entered into agreements

with family and friends to operate some of the stores, with Marc retaining an ownership interest in each store.

15.     On or about June 14, 2018, Tiana Character incorporated Character Financial Solutions, LLC in Florida. The articles of organization identify the business purpose of Character Financial Solutions, LLC as "Income Tax Preparation." Tiana Character is the sole manager and registered agent of Character Financial Solutions, LLC.  Character Financial Solutions, LLC lists its business address as 112 North Orange Blossom Trail, Orlando, FL 32808, which has been an Advanced Tax Services store location since at least 2015. Tiana Character, individually or through Character Financial Solutions, LLC, owns or operates a tax preparation business.

16.     Marc, Character, LaMoute, Pierre, and Thales prepare tax returns for compensation.  In addition to personally preparing tax returns for compensation, Marc, as the sole owner of Advanced Tax Services, Inc. and Genson Financial Group, LLC, and Character, as the sole owner of Character Financial Solutions, LLC, employ individuals (directly or through these entities) who prepare tax returns for compensation.

### Background

17.     LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2011, Gachette began franchising the LBS name through Loan Buy Sell, Inc., a corporation organized in the State of Florida, to his employees in order to broaden his revenue base.  In 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

18.     Marc began preparing tax returns in 2013, and his tax preparation business quickly expanded.  Marc hired former LBS employees, including Character and Erotida Harden, to train tax return preparers and manage and/or prepare tax returns at one or more of Marc's tax preparation stores.  In 2013, Character worked as a tax return preparer at the LBS store located at 1504 East Michigan Street, Orlando, Florida 32806, a store that Harden managed.  These former LBS employees continued to follow LBS practices and policies and use LBS forms and similar advertising while working at Marc's tax preparation stores.  In 2014 and 2015, Harden trained tax return preparers working at Advanced Tax Services.  The United States is simultaneously filing a lawsuit against Harden.

19.     Marc personally prepared the following number of tax returns identifying him as the paid preparer in 2013, 2014, 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC[1] |
|---|---|---|---|---|
| 2013 | 247 | 247 | 100% | 172 (69%) |
| 2014 | 267 | 266[2] | 99% | 180 (67%) |
| 2015 | 13 | 11 | 84% | 7 (53%) |
| 2016 | 29 | 29 | 100% | 28 (96%) |
| 2017 | 0 | N/A | N/A | N/A |
| 2018 | 4 | 4 | 100% | 2 (50%) |

20.     Since expanding Advanced Tax Services, Marc has personally prepared fewer tax returns, while devoting more time to overseeing the operation of Advanced Tax Services and its several stores.  From 2015 through 2018, employees of Marc and/or Advanced Tax Services,

---

[1]The Earned Income Tax Credit is a refundable tax credit available to certain low-income working people in varying amounts based on the taxpayer's income, filing status, and claimed number of dependents.

[2] The only tax return not claiming a refund was Marc's personal federal income tax return.

Inc., acting at Marc's direction or with his knowledge and consent, have prepared the majority of the tax returns prepared at Advanced Tax Services.

21.     Character personally prepared the following number of tax returns identifying her as the paid preparer in 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2015 | 120 | 120 | 100% | 100 (83%) |
| 2016 | 224 | 223 | 99% | 173 (77%) |
| 2017 | 408 | 406 | 99% | 298 (73%) |
| 2018 | 360 | 357 | 99% | 219 (60%) |

22.     Of the 1,112 tax returns that Character prepared from 2015 through 2018, only 6 tax returns did not request a refund.

23.     LaMoute personally prepared the following number of tax returns identifying him as the paid preparer in 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2015 | 100 | 100 | 100% | 55 (55%) |
| 2016 | 176 | 176 | 100% | 124 (74%) |
| 2017 | 210 | 209 | 99% | 139 (66%) |
| 2018 | 129 | 128 | 99% | 81 (62%) |

24.     Of the 615 tax returns that LaMoute prepared from 2015 through 2018, only 2 tax returns did not request a refund.

25.     Pierre personally prepared the following number of tax returns identifying him as the paid preparer in 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2015 | 137 | 137 | 100% | 110 (80%) |
| 2016 | 204 | 203 | 99% | 162 (79%) |
| 2017 | 212 | 212 | 100% | 179 (84%) |
| 2018 | 74 | 73 | 98% | 56 (75%) |

26.     Of the 627 tax returns that Pierre prepared from 2015 through 2018, only 2 tax returns did not request a refund.

27.     Thales personally prepared the following number of tax returns identifying her as the paid preparer in 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2018 | 171 | 170 | 99% | 128 (74%) |

28.     According to IRS records showing tax returns filed identifying the Employer Identification Numbers and/or the Electronic Filing Identification Numbers used by Advanced Tax Services, Inc., Advanced Tax Services, Inc. stores filed at least 376 tax returns in 2013, 1,768 tax returns in 2014, 2,278 tax returns in 2015, 1,424 tax returns in 2016, 943 tax returns in 2017, and 805 tax returns in 2018. Marc hires the tax return preparers employed at Advanced Tax Services, Inc., establishes the practices and policies at Advanced Tax Services, Inc. stores, and oversees the preparation of tax returns at Advanced Tax Services, Inc. stores.

29.     A tax return preparer, as defined by 26 U.S.C. § 7701(a)(36), includes not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.  In addition to personally preparing tax returns, Marc (individually or through Advanced Tax Services, Inc. and Genson Financial Group, LLC) and Character (individually or through Character Financial Solutions, LLC) own and operate tax preparation stores and employ (directly or through those entities) one or more persons who prepare tax returns for compensation.

30.     Individuals and firms that electronically file tax returns must first obtain an Electronic Filing Identification Number (EFIN) from the IRS.  In 2015, the IRS investigated whether a tax return preparer at an Advanced Tax Services store located in Orlando complied

8

with the "due diligence" requirements when preparing tax returns claiming the Earned Income

Tax Credit. In January 2016, following the investigation, which included interviewing Marc, the

IRS suspended Marc's EFIN to prevent him from electronically filing tax returns.

31.     In response to having his EFIN suspended, rather than cease filing tax returns,

Marc began to file tax returns using the EFIN registered to a friend and former LBS employee.

In at least 2016, tax returns filed at an Advanced Tax Services store were filed using the EFIN

registered to that former LBS employee.  Filing tax returns using an EFIN registered to another

business or individual violates IRS rules and regulations.

### The Defendants' Activities

32.     The Defendants prepare tax returns to generate bogus refunds for customers,

enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the

United States Treasury.

33.     Many of the Defendants' customers earn low to moderate incomes and lack

knowledge regarding tax law and tax return preparation. Customers often have no knowledge

that the Defendants have prepared and filed false tax returns on their behalf.  For others, the

Defendants mislead customers about what can "legally" be claimed on their tax returns,

particularly with respect to various credits and deductions, and by promising customers

thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their

tax returns.

34.     The Defendants make false claims on tax returns, particularly on the forms

attached to those returns, in order to improperly increase customers' refunds. After completing

the returns, the Defendants falsely tell the customers that these forms legally increased the

customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms

and the higher refund that the Defendants claimed.  The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

35.     The Defendants request on customers' tax returns a refund amount that is not based on the customers' actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

36.     The Defendants engage in unlawful tax return preparation practices including:

a.      Making false claims for the Earned Income Tax Credit;

b.      Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

c.      Fabricating businesses and related business income and expenses;

d.      Improperly claiming false filing status, such as Head of Household;

e.      Fabricating itemized deductions, including for unreimbursed employee business expenses, charitable contributions, and tax preparation fees paid;

f.      Falsely claiming the federal Fuel Tax Credit;

g.      Reporting inflated federal income tax withholdings that far exceed the amounts actually reported on customers' Forms W-2;

h.      Improperly preparing returns based on paystubs rather than Forms W-2;

i.      Claiming education credits to which their customers are not entitled;

j.      Failing to identify the actual paid preparer of the tax return;

k.      Failing to provide customers with a copy of the completed tax return; and

l.      Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

37.     The Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

38.     The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

39.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and $14,000, and decreases as income increases beyond $18,350. Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range." For tax year 2017, the maximum EITC was $6,318 and was available to eligible individuals with three dependent children who earned income between $14,000 and $18,350.

40.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

11

41.     The Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

42.     The Defendants also report bogus "Household Help" income on their customers' tax returns to falsely report earned income that improperly enables the customer to claim the EITC.  Household Help income ("HSH") is paid to individuals typically hired to perform household work, and these individuals are considered employees of the person for whom they perform the household work; the employer determines and controls the work performed by the individual.  The individual receiving the income may be paid in cash or non-cash benefits, on an hourly, weekly, or monthly basis, for jobs such as babysitting, house cleaning, yard work, health care, or driving.  Individuals who receive HSH receive Forms W-2 reporting income received and taxes withheld, just as with any other employment.  The Defendants report bogus HSH income on Line 7 of the Form 1040 income tax return.  IRS records do not show that Forms W-2 were issued by employers to the customers for whom the Defendants reported the purported HSH income on their tax returns.  As with reporting fabricated income on a Form Schedule C, reporting this fabricated HSH income enables the Defendants to falsely claim the EITC on customers' tax returns.  Often, the Defendants also falsely report that income tax was withheld from the phony HSH income, and then request a bogus refund of the tax purportedly withheld.

43. Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

44. In 2015, the IRS investigated whether a preparer at the Advanced Tax Services store located on Colonial Drive in Orlando complied with the due diligence requirements when preparing tax returns. The IRS reviewed 75 tax year 2013 tax returns prepared by a preparer at that Advanced Tax Services store in 2014, reviewed the related customer files, interviewed the preparer, and interviewed Marc. The IRS determined that the preparer failed to comply with the due diligence requirements when preparing all 75 of the reviewed tax returns. The IRS assessed $37,500 against the preparer for 75 violations of 26 U.S.C. § 6695(g). According to the preparer, when preparing these tax returns, she followed the Advanced Tax Services-established policies and procedures and the training provided to her at Advanced Tax Services.

45. In 2018, the IRS investigated whether Tiana Character complied with the due diligence requirements when preparing tax returns. The IRS reviewed 51 tax year 2017 tax returns that Character prepared in 2018, reviewed the related customer files, interviewed Character, and interviewed Marc. The IRS determined that Character failed to comply with the

due diligence requirements when preparing all 51 of the reviewed tax returns. The IRS assessed $53,040 against Character for 51 violations of 26 U.S.C. § 6695(g).

46.     The Defendants fail to comply with the due diligence requirements.  The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

### Fabricated Schedule C Business Income and Expenses

47.     The Defendants prepare tax returns reporting non-existent businesses on bogus Forms Schedule C.  On some of these returns, the Defendants report substantial business income, but little or no expenses.  On other returns, the Defendants report substantial expenses, but little or no income.  The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

48.     According to Character, while working at LBS, she was taught to report a customer's personal expenses as business expenses on Forms Schedule C.  The Defendants and preparers at Advanced Tax Services report personal expenses and fabricated expenses on Forms Schedule C to falsely reduce a customer's taxable income and generate a larger, bogus refund.

49.     In 2015, preparers at Advanced Tax Services, including Marc, Character, LaMoute, and Pierre, prepared at least 535 federal income tax returns that reported, on a Form Schedule C, no income from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 535 tax returns reporting no income but over $4,000 in expenses

on a Form Schedule C, 371 reported expenses totaling $10,000 or more; 124 reported expenses totaling $20,000 or more; and 28 reported expenses totaling $30,000 or more.

50.    In 2016, preparers at Advanced Tax Services, including Character, LaMoute, and Pierre, prepared at least 291 federal income tax returns that reported, on a Form Schedule C, no income from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 291 tax returns reporting no income but over $4,000 in expenses on a Form Schedule C, 221 reported expenses totaling $10,000 or more; 93 reported expenses totaling $20,000 or more; and 21 reported expenses totaling $30,000 or more.

51.    In 2017, preparers at Advanced Tax Services, including Character, LaMoute, and Pierre, prepared at least 155 federal income tax returns that reported, on a Form Schedule C, no income from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 155 tax returns reporting no income but over $4,000 in expenses on a Form Schedule C, 108 reported expenses totaling $10,000 or more; 29 reported expenses totaling $20,000 or more; and 7 reported expenses totaling $30,000 or more.

52.    In 2018, preparers at Advanced Tax Services, including Marc, Character, LaMoute, Pierre, and Thales, prepared at least 72 federal income tax returns that reported, on a Form Schedule C, no income from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 72 tax returns reporting no income but over $4,000 in expenses on a Form Schedule C, 50 reported expenses totaling $10,000 or more; 7 reported expenses totaling $20,000 or more; and 1 reported expenses totaling $30,000 or more.

**Customer 1**

53.    For example, Character prepared the 2016 and 2017 federal income tax returns of Customer 1 of Orlando, Florida.  Customer 1 and his wife went to have their tax returns

15

prepared. Character told Customer 1 and his wife that they could file separate tax returns, and then falsely claimed "single" filing status on Customer 1's tax return.

54.     In 2016 and 2017, Customer 1 was employed as a manager at a seafood warehouse. Customer 1 did not own or operate a business, and did not tell Character that he owned a business. When having his tax returns prepared, Customer 1 provided Character with his paystubs, Form W-2, ID, and children's social security information. Customer 1's wages totaled $42,134 in 2016 and $45,582 (reported on the return as $47,464) in 2017.

55.     On the Schedule C attached to Customer 1's 2016 tax return, Character falsely claimed that Customer 1 owned a business, not identified by name or type of business, through which Customer 1 had no sales and received no gross receipts, but incurred $14,947 in expenses. The fabricated expenses included $12,397 for car and truck expenses, $450 for meals and entertainment, and $2,100 for utilities. Customer 1, who did not operate a business, did not incur any such business expenses, and did not provide the fabricated expense amounts to Character. Character did not review the completed tax return with Customer 1, and did not inform Customer 1 that she reported fabricated business expenses on his tax return.

56.     By reporting the phony business loss, Character falsely claimed an EITC in the amount of $3,680 and a bogus refund in the amount of $11,922 on Customer 1's 2016 tax return.

57.     On the Schedule C attached to Customer 1's 2017 tax return, Character falsely claimed that Customer 1 owned a business, not identified by name or type of business, through which Customer 1 had no sales and received no gross receipts, but incurred $25,498 in expenses. The fabricated expenses included $11,798 for car and truck expenses, $7,500 for insurance, and $6,200 for utilities. Customer 1, who did not operate a business, did not incur any such business expenses, and did not provide the fabricated expense amounts to Character. Character did not

16

review the completed tax return with Customer 1, and did not inform Customer 1 that she reported fabricated business expenses on his tax return.

58.     Character also falsely claimed itemized deductions on the Schedule A attached to Customer 1's tax return in the total amount of $33,105, including $33,000 in purported unreimbursed employee expenses (*see* paragraphs 92-94, *infra*).   Character also falsely reported that Customer 1 had $5,311 in taxes withheld from his wages, when the Form W-2 from Customer 1's employer reported that Customer 1 actually only had $4,811 in taxes withheld (*see* paragraphs 155-157, *infra*).   By reporting the fabricated business loss, itemized deductions, and falsely inflated withholdings, Character falsely claimed an EITC in the amount of $4,850 and a bogus refund in the amount of $12,161 on Customer 1's 2017 tax return. The amount of the refund that Character claimed on the 2017 tax return she filed with the IRS was more than the refund claimed on the copy she provided to Customer 1, and more than the refund that Customer 1 actually received. Character did not provide Customer 1 with complete copies of his tax returns containing the Forms Schedule A or C.

**Customer 2**

59.     Character prepared the 2015 federal income tax return of Customer 2 of Orlando, Florida.

60.     Customer 2 worked as a commercial truck driver and received a Form W-2 from his employer.   In 2015, Customer 2's wages totaled $70,135. Customer 2 did not own or operate his own business in 2015.

61.     Character falsely reported on the Schedule C attached to the tax return that Customer 1 owned a business, not identified on the Schedule C by name or type of business, through which Customer 2 purportedly did not have any sales or receive any gross receipts, but

17

incurred $36,599 in expenses. The fabricated expenses included $10,492 for car and truck

expenses, $864 for insurance, $6,212 for renting or leasing vehicles, $14,251 for renting or

leasing business property, $115 for taxes and licenses, and $4,625 for utilities. Customer 2 did

not operate a business, did not incur any such business expenses, and did not provide the

fabricated expense amounts to Character. Character did not review the completed tax return with

Customer 2, and did not inform Customer 2 that she reported fabricated business expenses on his

tax return.

62.     By claiming the phony business loss, Character falsely claimed an EITC in the

amount of $2,985, and a bogus refund in the amount of $8,863.

63.     Following the IRS's examination of his 2015 tax return, Customer 2 owed

$19,364.91 in taxes, interest, and penalties.

**Customer 3**

64.     LaMoute prepared the 2017 federal income tax return of Customer 3 of Wesley

Chapel, Florida.  In 2017, Customer 3 was employed as a security guard and as a customer

service representative, and his only job-related expenses were for commuting to and from his

jobs, which are not deductible expenses. Customer 3 did not own or operate a business in 2017.

65.     On the Schedule C attached to Customer 3's 2017 tax return, LaMoute falsely

claimed that Customer 3 owned a business, not identified by name or type of business, through

which Customer 3 had no sales and received no gross receipts, but incurred $15,371 in expenses,

all for purported car and truck expenses.  Customer 3, who did not own a business, did not incur

any such business expenses, and did not provide the fabricated expense amounts to LaMoute.

66.     By reporting the fabricated business loss, along with a non-qualifying dependent

(discussed in paragraphs 83-86, *infra*), a bogus fuel tax credit (discussed in paragraphs 136-140,

18

*infra*), and fabricated itemized deductions (as discussed in paragraphs 96-101, *infra*), LaMoute falsely claimed an EITC in the amount of $3,400 and a bogus refund in the amount of $8,432 on Customer 3's 2017 tax return.

### Customers 4 and 5

67.     Character prepared the 2016 federal income tax return of Customers 4 and 5 of Orlando, Florida. Customers 4 and 5 were employed at Disney in 2016. Customers 4 and 5 received wages totaling $62,491 in 2016.

68.     On the Schedule C attached to the 2016 tax return, Character falsely claimed that Customer 4 owned a business, not identified by name or type of business, through which Customer 4 had no sales and received no gross receipts, but incurred $30,500 in expenses, including $1,200 for insurance, $19,800 for renting business property, $3,000 for repairs and maintenance, and $6,500 for utilities.  Customer 4 did not operate a business and did not incur any such business expenses.

69.     By claiming the fabricated business loss, Character falsely claimed an EITC in the amount of $3,838 and a bogus refund in the amount of $9,890 on the 2016 tax return of Customers 4 and 5.  As discussed in paragraphs 119-121, *infra*, on the 2017 tax return of Customers 4 and 5, rather than falsely reduce the taxable income of Customers 4 and 5 by reporting a phony business loss on a Schedule C, Character falsely claimed over $54,000 in fabricated job expenses on a Schedule A attached to that tax return.

### Customer 6

70.     Character prepared the 2017 federal income tax return of Customer 6 of Orlando, Florida. Customer 6 received wages totaling $54,637 in 2017.

71.     On the Schedule C attached to the tax return, Character falsely claimed that Customer 6 owned a business, not identified by name or type of business, through which Customer 6 had no sales and received no gross receipts, but incurred $14,049 in expenses, including $10,049 for car and truck expenses, $500 for supplies, and $3,500 for utilities. Customer 6 did not operate a business and did not incur any such business expenses.

72.     On the Schedule A attached to the tax return, Character also falsely reported that Customer 6 incurred $42,730 in unreimbursed employee business expenses, an amount greater than 78% of Customer 6's wages.  By claiming the fabricated business loss and phony job-related expenses, Character falsely reduced Customer 6's taxable income to zero, claimed a fabricated EITC in the amount of $933, and claimed a bogus refund in the amount of $6,673.

73.     Another preparer at Advanced Tax Services prepared the 2015 federal income tax return of Customer 6.  Customer 6 received wages totaling $40,994 in 2015.  On the Schedule C attached to the 2015 tax return, the preparer falsely claimed that Customer 6 owned a business, not identified by name or type of business, through which Customer 6 had no sales and received no gross receipts, but incurred $20,967 in expenses, including $15,717 for car and truck expenses, $2,800 for renting business property, and $2,450 for supplies.  Customer 6 did not operate a business and did not incur any such business expenses.

74.     By claiming the fabricated business loss, the Advanced Tax Services preparer falsely claimed an EITC in the amount of $5,145 and a bogus refund in the amount of $9,176 on the 2015 tax return of Customer 6.

**Customer 7**

75.     Character prepared the 2016 and 2017 federal income tax returns of Customer 7 of Orlando, Florida.  Customer 7 received wages totaling $19,370 in 2016.

20

76.     On the Schedule C attached to the tax return, Character falsely claimed that Customer 7 owned a business, not identified by name or type of business, through which Customer 7 had no sales and received no gross receipts, but incurred $5,622 in expenses, all for purported utility expenses.  Customer 7 did not operate a business and did not incur any such business expenses.

77.     By claiming the fabricated business loss, Character falsely reduced Customer 7's taxable income to zero, claimed a fabricated EITC in the amount of $3,373, and claimed a bogus refund in the amount of $6,509.

78.     Customer 7 received wages totaling $37,249 in 2017 working at CVS.  On the Schedule C attached to the tax return, Character falsely claimed that Customer 7 owned a business, not identified by name or type of business, through which Customer 7 had no sales and received no gross receipts, but incurred $10,523 in expenses, all purportedly related to renting or leasing business property.  Customer 7 did not own a business or incur any such expenses.

79.     On the Schedule A attached to the tax return, Character also falsely reported that Customer 7 incurred $35,368 in unreimbursed employee business expenses, an amount greater than 90% of Customer 7's wages from CVS.  By claiming the fabricated business loss and phony job-related expenses, Character falsely reduced Customer 7's taxable income to zero, claimed a fabricated EITC in the amount of $1,772, and claimed a bogus refund in the amount of $4,122.

**Customer 8**

80.     Customer 8 of Gainesville, Florida had his 2016 and 2017 federal income tax returns prepared at the Advanced Tax Services store in Gainesville.  Customer 8 was employed by Coca-Cola in 2016 and 2017.

81.     Pierre prepared Customer 8's 2016 tax return. Customer 8 received wages totaling $26,843 in 2016.  On the Schedule C attached to the return, Pierre falsely reported that Customer 8 owned a business, not identified by name or type of business, through which Customer 8 had no sales and received no gross receipts, but incurred expenses totaling $18,295, all for purported car and truck expenses. Pierre also falsely claimed a fuel tax credit (discussed in paragraphs 136-140, *infra*), in the amount of $547, based on a purported 2,987 gallons of fuel purchased for off-highway business use.  As a result of these false claims, Pierre claimed a bogus refund of $2,046 on Customer 8's 2016 tax return.

82.     Thales prepared Customer 8's 2017 tax return. Customer 8 received wages totaling $29,016 in 2017.  On the Schedule C attached to the return, Thales falsely reported that Customer 8 owned a business, not identified by name or type of business, through which Customer 8 had no sales and received no gross receipts, but incurred expenses totaling $19,924, all for purported car and truck expenses. Thales also falsely claimed a fuel tax credit (discussed in paragraphs 136-140, *infra*), in the amount of $565, based on a purported 3,087 gallons of fuel purchased for off-highway business use.  As a result, Thales claimed a fabricated EITC in the amount of $251 and a bogus refund of $2,817 on Customer 8's 2017 tax return.

**Intentionally Claiming an Improper Filing Status and Bogus Dependents**

83.     The Defendants prepare tax returns reporting false filing status.  Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

84.     The Defendants file separate returns for married couples who are not living apart, improperly using the "Head of Household" or "Single" filing status, both of which are

22

unavailable to married couples living together. Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each unlawfully receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

85.     Additionally, the Defendants claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through both the false filing status and fraudulent EITC claim based on the bogus dependents.

### Customer 3 (con't)

86.     For example, as discussed in paragraphs 64-66, *supra*, LaMoute prepared the 2017 federal income tax return of Customer 3. In 2017, Customer 3 lived with his girlfriend and his girlfriend's daughter. LaMoute knew that Customer 3 was not married, and that the child was not related to Customer 3. However, LaMoute falsely claimed the child as a dependent on the tax return as Customer 3's "stepchild," falsely claimed a related Child Tax Credit, and falsely claimed the EITC in the amount of $3,400 as a result.

### Customers 9 and 10

87.     Character prepared the separate 2016 and 2017 federal income tax returns of Customers 9 and 10 of Orlando, Florida. Customers 9 and 10 were married in 2016 and 2017, went to Advanced Tax Services together to have their tax returns prepared, and informed Character that they were married. Character informed Customers 9 and 10, without additional information, that they would receive a larger refund if they filed separate tax returns.

88.     Character prepared separate tax returns for Customers 9 and 10 for both 2016 and 2017. Character falsely claimed "single" filing status on Customer 9's 2016 and 2017 tax returns, and falsely claimed "head of household" filing status on Customer 10's 2016 and 2017 tax returns. Character also falsely claimed the children of Customers 9 and 10 as dependents on separate tax returns. On the 2016 tax returns, Character claimed two children as dependents on Customer 10's tax return, while claiming two children as dependents on Customer 9's tax return. On the 2017 tax returns, Character claimed one child as a dependent on Customer 10's tax return, while claiming two children as dependents on Customer 9's tax return.

89.     In addition, on the Schedule C attached to Customer 9's 2016 tax return, Character falsely reported that Customer 9 owned a business, not identified by name or type of business, through which Customer 9 had no sales and received no gross receipts, but incurred expenses totaling $12,178, including for insurance ($4,000), repairs and maintenance ($7,800), and deductible meals and entertainment ($378). Customer 9 did not have a business and did not provide these purported expenses amounts to Character. On the Schedule A attached to the 2016 tax return, Character falsely claimed that Customer 9 incurred unreimbursed employee business expenses totaling $12,914 and tax preparation fees also totaling $12,914. Customer 9 did not incur these expenses and did not discuss these purported expenses with Character. In 2017, Customer 9 started a lawn care business. On the Schedule C attached to Customer 9's 2017 tax return, Character falsely reported that Customer 9's lawn care business had no sales and received no gross receipts, but incurred expenses totaling $12,943, including for repairs and maintenance ($3,277), supplies ($3,288), deductible meals and entertainment ($578), and utilities ($5,800). Customer 9 did not incur these expenses and did not provide these purported expenses amounts to Character. On the Schedule A attached to the 2016 tax return, Character falsely claimed that

24

Customer 9 incurred unreimbursed employee business expenses totaling $25,244.  Customer 9 did not incur these expenses and did not discuss these purported expenses with Character.

90.     Character thus falsely claimed the EITC in the amounts of $4,111 and $5,616 and bogus refunds of $9,715 and $10,091 on Customer 9's 2016 and 2017 tax returns, respectively. Character falsely claimed the EITC in the amounts of $5,572 and $3,400 and bogus refunds of $7,797 and $6,298 on Customer 10's 2016 and 2017 tax returns, respectively.

**Customers 28 and 29**

91.     Character falsely prepared separate 2016 tax returns for Customers 28 and 29 of Kissimmee, Florida.  Customers 28 and 29 completed forms, provided to customers at Advanced Tax Services, Inc., on which they identified each other as a spouse.  Moreover, the mortgage interest statement that Customers 28 and 29 provided Character identified both Customers 28 and 29 as the joint borrowers.  Knowing that Customers 28 and 29 were married, Character, falsely claimed "head of household" filing status and claimed the son of Customers 28 and 29 as a dependent on Customer 28's 2016 tax return, while claiming "married filing separately" status – and identifying Customer 28 as the spouse – on Customer 29's 2016 tax return.  Customers 28 and 29 were each separately charged fees totaling $613 to have their 2016 tax returns prepared.

**Bogus Schedule A Deductions**

92.     The Defendants prepare tax returns reporting bogus itemized deductions on Form Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable income.

93.     For example, the Defendants prepare tax returns for customers that include Forms Schedule A making false claims for purported unreimbursed employee business expenses. Section 162 of the Internal Revenue Code governs trade or business expenses.  The Defendants

often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers. The Defendants ask customers whether they incurred expenses for such personal expenditures such as rent, cell phones, and clothing, without explaining to customers that these expenses are actually non-deductible. If the customer responds that they had such expenses, the Defendants then report these non-deductible expenses as deductible employee business expenses in amounts that the Defendants fabricate in order to maximize the customer's refund. In instances where customers do have actual qualifying expenses, such as for charitable contributions, the Defendants report a falsely inflated amount of the expense that the customer incurred, to improperly increase the tax refund claimed on the return.

94.     Often the claimed unreimbursed employee business expenses are false on their face.

**Customers 11 and 12**

95.     For example, Pierre prepared the 2017 federal income tax return of Customers 11 and 12 of Gainesville, Florida. Customers 11 and 12 received wages totaling $61,386 in 2017. Pierre falsely claimed that Customers 11 and 12 incurred unreimbursed employee business expenses totaling $218,611, or nearly quadruple the amount of the wages they received. Specifically, Pierre falsely reported that Customer 12, who worked at Wal-Mart and Burlington Coat Factory and received wages totaling $47,294 in 2017, incurred unreimbursed employee business expenses in the amount of $198,754 for overnight travel expenses. Similarly, Pierre falsely reported that Customer 11, who received wages totaling $14,092 in 2017, incurred unreimbursed employee business expenses in the amount of $19,857 for overnight travel

expenses.  As a result, Pierre falsely reduced the taxable income of Customers 11 and 12 to zero and claimed a bogus refund of $3,522 on their 2017 tax return.

**Customer 3 (con't)**

96.     As discussed in paragraphs 64-66, *supra*, LaMoute prepared the 2017 federal income tax return of Customer 3.  LaMoute also prepared Customer 3's 2016 federal income tax return, but Pierre is identified as the paid preparer on the 2016 tax return.

97.     In 2016 and 2017, Customer 3 did not incur any job-related expenses; his only expenses were related to commuting to and from his jobs. Customer 3's wages totaled $33,255 in 2016 and $31,167 in 2017.

98.     Customer 3 was employed as a security guard in 2016. On the Schedule A attached to Customer 3's 2016 tax return, LaMoute falsely reported that Customer 3 incurred $27,427 in unreimbursed employee business expenses, an amount exceeding 82% of the wages Customer 3 received. The fabricated expenses included $11,987 for vehicle expenses, $5,243 for parking fees, tolls, and transportation, $6,824 for overnight travel, and $6,745 for meals and entertainment (the exact same amount claimed on Customer 13's 2017 tax return, *see* paragraph 104, *infra*). Customer 3 did not incur these expenses, did not tell LaMoute that he incurred such expenses, and was not aware that LaMoute claimed these expenses on his tax return.  LaMoute also falsely claimed that Customer 3 incurred expenses of $8,769 for general sales taxes.

99.     By claiming the fabricated unreimbursed employee business expenses, along with a phony fuel tax credit (discussed in paragraphs 136-140, *infra*), LaMoute claimed a bogus refund in the amount of $5,001 on Customer 3's 2016 tax return.

100.    On the Schedule A attached to Customer 3's 2017 tax return, LaMoute falsely reported that Customer 3 incurred $24,971 in unreimbursed employee business expenses, an

amount exceeding 80% of the wages Customer 3 received. The fabricated expenses included $17,473 for vehicle expenses, $5,034 for parking fees, tolls and transportation, and $4,927 for meals and entertainment. Customer 3 did not incur any of these expenses, did not tell LaMoute that he incurred such expenses, and was not aware that LaMoute claimed these expenses on his tax return. LaMoute also falsely claimed that Customer 3 incurred expenses of $9,504 for general sales taxes.

101.    By reporting the fabricated itemized deductions, along with a non-qualifying dependent (discussed in paragraph 86, *supra*), a bogus fuel tax credit (discussed in paragraphs 136-140, *infra*), and a fabricated business loss (discussed in paragraphs 64-66, *supra*), LaMoute falsely claimed an EITC in the amount of $3,400 and a bogus refund in the amount of $8,432 on Customer 3's 2017 tax return.

### Customer 13

102.    LaMoute prepared the 2017 federal income tax return of Customer 13 of Orlando, Florida. Customer 13 worked three jobs in 2017, and received a Form W-2 from each of his employers. According to the Forms W-2, Customer 13's wages totaled $7,852, and $263 in taxes were withheld from the wages. LaMoute, however, reported that Customer 13's wages totaled $16,850 and that $579 in taxes were withheld from Customer 13's wages. Customer 13 did not incur any unreimbursed employee business expenses for his job, although he did purchase fuel for a company truck on at least one occasion while delivering products.

103.    Customer 13 was not present when his 2017 tax return was prepared. He provided his Forms W-2 to his girlfriend, who, in turn, provided them to someone at Advance Tax Services. Customer 13's conversation with the preparer was limited to providing his bank

account information to the preparer over the telephone.  Customer 13 never discussed any job-related expenses with the preparer.

104.    On the Schedule A attached to Customer 13's tax return, LaMoute falsely reported that Customer 13 incurred $21,546 in unreimbursed employee business expenses, an amount that exceeded the wages Customer 13 received by $4,696. The fabricated expenses included $6,043 for vehicle expenses, $5,481 for parking fees, tolls and transportation, $6,649 for overnight travel expenses, and $6,745 for meals and entertainment (the exact same amount claimed on Customer 3's 2017 tax return, *see* paragraph 98, *supra*). Customer 13 did not incur these expenses, did not tell LaMoute that he incurred such expenses, and was not aware that LaMoute claimed these expenses on his tax return. LaMoute also falsely reported that Customer 13 purchased 5,263 gallons of fuel for nontaxable use and claimed a bogus fuel tax credit (as discussed in paragraphs 136-140, *infra*) in the amount of $963. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 13 would have incurred a gas expense in the amount of $10,526.  By claiming the fabricated job-related expenses and fuel tax credit, and inflated amount of tax withholdings, LaMoute claimed a bogus refund in the amount of $1,542 on Customer 13's 2017 tax return.

**Customer 14**

105.    LaMoute prepared the 2017 federal income tax return of Customer 14 of Hinesville, Georgia.  Customer 14 was employed in the military in 2017, and received a Form W-2 showing her wages, which totaled $28,399 in 2017.

106.    On the Schedule A attached to Customer 14's tax return, LaMoute falsely reported that Customer 14 incurred $63,974 in unreimbursed employee business expenses, an amount that exceeded the wages Customer 14 received by $35,575. The fabricated expenses

included $9,980 for vehicle expenses, $9,320 for parking fees, tolls and transportation, two separate claims for overnight travel expenses in the amounts of $19,855 and $19,523, and $10,592 for meals and entertainment.

107.    By claiming the fabricated unreimbursed employee business expenses, LaMoute claimed a bogus refund in the amount of $1,570 on Customer 14's 2017 tax return.

**Customer 15**

108.    LaMoute prepared the 2016 and 2017 federal income tax returns of Customer 15 of Leesburg, Florida. Customer 15 is retired and was not employed in 2016 or 2017, but received a pension from the State of Florida and social security benefits.

109.    On the Schedule A attached to Customer 15's 2016 tax return, LaMoute falsely reported that Customer 15 incurred $12,803 in unreimbursed employee business expenses (even though Customer 15 was retired and did not have a job). The fabricated expenses included $5,768 for parking fees, tolls and transportation, $2,346 for overnight travel expenses, and $4,609 for meals and entertainment. LaMoute also falsely claimed that Customer 15 incurred expenses of $5,435 for general sales taxes. Customer 15 did not incur these expenses, did not tell LaMoute that she incurred such expenses, and was not aware that LaMoute claimed these expenses on her tax return. By claiming the fabricated unreimbursed employee business expenses and general sales taxes, LaMoute claimed a bogus refund in the amount of $4,412 on Customer 15's 2016 tax return.

110.    On the Schedule A attached to Customer 15's 2017 tax return, LaMoute falsely reported that Customer 15 incurred $29,440 in unreimbursed employee business expenses (even though Customer 15 was retired and did not have a job). The fabricated expenses included $17,070 for vehicle expenses, $7,593 for overnight travel expenses, and $9,553 for meals and

entertainment. LaMoute also falsely claimed that Customer 15 incurred expenses of $4,656 for state income taxes, even though Florida does not impose a state income tax. Customer 15 did not incur any of these expenses, did not tell LaMoute that she incurred such expenses, and was not aware that LaMoute claimed these expenses on her tax return. By claiming the fabricated unreimbursed employee business expenses and state income taxes, LaMoute claimed a bogus refund in the amount of $4,507 on Customer 15's 2017 tax return.

### Customers 16 and 17

111.    Character prepared the 2017 federal income tax return of Customers 16 and 17 of Clermont, Florida.

112.    Customer 16 was employed as a foreman at a utility construction company in 2017, and received wages totaling $76,772. Customer 17 was not employed in 2017. Customer 16's employer provided him with a company truck and reimbursed him for his expenses, other than his work boots and safety goggles, for which Customer 16 spent around $90.

113.    Character did not ask Customer 16 whether he incurred any job-related expenses, or how much he spent on any such expenses in 2017. On the Schedule A attached to the tax return, Character falsely reported that Customer 16 incurred $49,130 in unreimbursed employee business expenses, an amount nearly equal to 64% of his wages. Customer 16 did not incur these expenses, did not provide this amount to Character, and was unaware that Character reported the fabricated expenses on his tax return, because she did not review the completed tax return with Customer 16 and did not provide Customer 16 with a complete copy of the tax return that included the Form Schedule A.

114.    By reporting the fabricated job-related expenses on the Schedule A, Character claimed a bogus refund in the amount of $9,016 on the 2017 tax return of Customers 16 and 17.

31

Customer 16 was surprised at the amount of the refund, which was roughly double the amount they received the previous year when their tax return was prepared at a different business.

### Customer 18

115.    Customer 18 of Gainesville, Florida had his 2017 federal income tax return prepared at the Advanced Tax Services store in Gainesville, Florida.

116.    In 2017, Customer 18 was not employed at a job through which Customer 18 received wages. Customer 18 received social security benefit income in 2017. Thus, Customer 18 did not have any expenses related to any employment.

117.    The Advanced Tax Services preparer reported on line 7 of the return that Customer 18 did not receive any wages or salary. The preparer then falsely reported on the Schedule A attached to the tax return that Customer 18 incurred $27,862 in unreimbursed employee business expenses, related to a purported job that Customer 18 did not have in 2017. The phony job-related expenses included $13,713 for vehicle expenses, $5,475 for parking fees, tolls, and transportation, and $8,674 for overnight travel expenses. In addition, the preparer falsely claimed a fuel tax credit in the amount of $1,453 related to the purported purchase of $7,941 gallons of nontaxable gasoline (*see* paragraphs 136-140, *infra*).

118.    By reporting the fabricated employee business expenses on the Schedule A and the bogus fuel tax credit, the Advanced Tax Services preparer claimed a bogus refund in the amount of $1,124 on Customer 18's 2017 tax return.

### Customers 4 and 5 (con't)

119.    Character prepared the 2017 federal income tax return of Customers 4 and 5 of Orlando, Florida. Customers 4 and 5 were employed at Disney in 2017. According to the tax return, Customers 4 and 5 received wages totaling $80,363 in 2017.

120.    On the Schedule A attached to the 2017 tax return, Character falsely reported that Customers 4 and 5 incurred unreimbursed employee business expenses totaling $54,620, or approximately 68% of their reported wages.  Character did not prepare a Form 2106 to categorize the purported expenses, but merely reported the $54,620 as "expenses."  Customers 4 and 5 did not incur any such unreimbursed job-related expenses working at Disney.

121.    By claiming the fabricated expenses, Character falsely reduced the taxable income of Customers 4 and 5 to $5,335 and claimed a bogus refund in the amount of $8,977.

**Customers 19 and 20**

122.    Thales prepared the 2017 federal income tax return of Customers 19 and 20 of Gainesville, Florida.

123.    In 2017, Customer 19 received wages totaling $46,800 and Customer 20 received wages totaling $10,133 for her job at a fast food restaurant.  On the Schedule A attached to the tax return, Thales falsely claimed, as a tax that Customers 19 and 20 paid in 2017, a personal expense for "rent" in the amount of $11,400. Thales further falsely reported that Customer 19 incurred $9,855 in unreimbursed job-related meals and entertainment expenses, and that Customer 20 incurred $19,875 in unreimbursed job-related overnight travel expenses and $8,527 in unreimbursed job-related meals and entertainment expenses, an amount that exceeded her wages by over $18,000.

124.    In addition, Thales falsely reported on the Schedule C attached to the return that Customer 19 had a business, not identified by name or type of business, through which he had no sales and received no gross receipts, but incurred expenses totaling $22,876, all for purported car and truck expenses. The bogus expenses claimed on the Schedules A and C exceeded the 2017 income of Customers 19 and 20 by $18,833. Thales also falsely claimed a fuel tax credit

(discussed in paragraph 136-140, *infra*), in the amount of $510, based on a purported 2,785

gallons of fuel purchased for off-highway business use. As a result of these false claims, Thales

falsely reduced the taxable income of Customers 19 and 20 to zero and claimed a bogus refund

of $3,248 on the 2017 tax return of Customers 19 and 20.

### Customer 21

125. Customer 21 of Gainesville, Florida had her 2016 and 2017 federal income tax

returns prepared at the Advanced Tax Services store in Gainesville. Customer 21 was employed

at an insurance company in 2016 and 2017, and also worked at Kelly Services in 2017.

126. LaMoute prepared Customer 21's 2016 tax return. Customer 21 received wages

totaling $41,702 in 2016. In 2016, Customer 21 did not incur any job-related expenses and did

not inform LaMoute that she incurred any such expenses. On the Schedule A attached to the

return, LaMoute falsely claimed that Customer 21 incurred unreimbursed employee business

expenses totaling $33,142, or over 79% of her wages. LaMoute falsely claimed that Customer

21 incurred job-related expenses in the amount of $14,075 for vehicle expenses, $7,457 for

parking fees, tolls, and transportation, $7,356 for overnight travel expenses, and $8,475 for meals

and entertainment. As a result of these false claims, LaMoute claimed a bogus refund of $4,739

on Customer 21's 2016 tax return.

127. Thales is identified as the preparer of Customer 21's 2017 tax return, but

Customer 21 identified LaMoute as the preparer. Customer 21 received wages totaling $48,137

in 2017. In 2017, Customer 21 did not incur any job-related expenses and did not inform

LaMoute that she incurred any such expenses. On the Schedule A attached to the return,

LaMoute falsely claimed that Customer 21 incurred unreimbursed employee business expenses

totaling $29,425, or over 61% of her wages. LaMoute falsely claimed that Customer 21 incurred

34

job-related expenses in the amount of $8,749 for vehicle expenses, $8,445 for parking fees, tolls, and transportation, $8,353 for overnight travel expenses, and $7,756 for meals and entertainment. In addition, on the Schedule C attached to the return, LaMoute falsely reported that Customer 21 owned a business, not identified by name or type of business, through which Customer 21 had no sales and received no gross receipts, but incurred expenses totaling $21,823, all for purported car and truck expenses. Customer 21 did not own a business and did not discuss any business expenses with LaMoute. As a result of these false claims, LaMoute claimed a fabricated EITC in the amount of $2,124 and a bogus refund of $6,439 on Customer 21's 2017 tax return. LaMoute did not review the completed 2016 or 2017 tax return with Customer 21 and Customer 21 was not aware of the false claims that LaMoute reported on the tax returns.

### Customers 28 and 29 (con't)

128. As discussed in paragraph 91, *supra*, Character prepared the separate 2016 federal income tax returns of Customers 28 and 29. Customers 28 and 29 provided Character with a copy of their Forms W-2 and 1098 Mortgage Interest Statements, showing that Customers 28 and 29 paid $4,731 in home mortgage interest.

129. On the Schedule A attached to Customer 28's 2016 tax return, Character falsely claimed unreimbursed employee business expenses in the amount of $17,000, purportedly for a "mortgage" – an alleged job-related expense claimed by an *employee* of a business – and also claimed a deduction for tax preparation fees in the amount of $17,000. The combined fabricated itemized deductions claimed nearly equaled the $37,283 in wages that Customer 28 received in 2016. Character also falsely claimed a fuel tax credit in the amount of $275, for purportedly purchasing 1,500 gallons of fuel for off-highway business use (as discussed in paragraphs 136-140, *infra*). Thus, by claiming $34,000 in phony deductions on the Form Schedule A, and

claiming a bogus fuel tax credit of $275, Character claimed a bogus refund in the amount of $8,452 on Customer 28's 2016 tax return.

130.    On Customer 29's 2016 tax return, Character falsely claimed a fuel tax credit in the amount of $92, for purportedly purchasing 500 gallons of fuel for off-highway business use. In addition, on the Form Schedule A attached to the tax return, Character falsely claimed unreimbursed employee business expenses in the amount of $28,726, purportedly for a "mortgage" – again, an alleged job-related expense claimed by an *employee* of a business. Thus, between the tax returns of Customers 28 and 29, Character falsely claimed that they incurred $45,726 in mortgage expenses, far greater than the $4,731 in home mortgage interest they actually paid in 2016. By claiming $28,726 in phony job-related deductions on the Form Schedule A, and claiming a bogus fuel tax credit of $92, Character claimed a bogus refund in the amount of $5,682 on Customer 29's 2016 tax return.

131.    Character claims fabricated expenses for tax preparation fees that the customers purportedly incurred to have their tax return prepared the previous year. These false tax preparation fee expenses are claimed in outrageous amounts that are false on their face, frequently for thousands or tens of thousands of dollars. In 2017, Character prepared at least 44 tax returns falsely claiming that the customer incurred expenses for tax preparation fees between $4,000 and $32,900. On all 44 of these tax returns, Character also falsely reported that the customers incurred unreimbursed employee business expenses in the exact same amount as the reported phony tax preparation fee expense.

**Customer 22**

132.    For example, Character prepared the 2016 federal income tax return of Customer 22 of Cocoa, Florida. In 2016, Customer 22 received wages totaling $56,360 from her two jobs.

133.    On the Schedule A attached to the tax return, Character falsely reported that Customer 22 incurred $25,700 in unreimbursed employee business expenses. Character did not categorize these fabricated expenses on a Form 2106. Character also falsely reported on the Schedule A that Customer 22 incurred an expense in the exact same amount of $25,700 for tax preparation fees. Customer 22 did not incur any such expenses. On the Schedule C attached to the tax return, Character falsely reported that Customer 22 owned a business, not identified by name or type of business, through which she had no sales and received no gross receipts but incurred expenses totaling $28,450, including for insurance ($3,500), renting business property ($17,000), supplies ($1,500), deductible meals and entertainment ($250), and utilities ($6,200). The claimed (and fabricated) itemized deductions and business loss totaled over $10,000 more than Customer 22's income in 2016, and falsely reduced Customer 22's taxable income to zero.

134.    In addition, Character falsely claimed a $1,000 American opportunity education credit on Customer 22's 2016 tax return (as discussed in paragraph 178, *infra*). Character falsely reported that Customer 22 incurred $4,000 in qualified education expenses related to her son's education when, in reality, as reported on the Form 1098-T issued by the school, the scholarships or grants that her son received exceeded the tuition by over $18,000, and Customer 22 did not incur any out-of-pocket education-related expenses.

135.    As a result of these phony claims, Character claimed a fabricated EITC in the amount of $1,438 and a bogus refund in the amount of $6,838 on Customer 22's 2016 tax return.

### Fraudulent Fuel Tax Credits

136.    The Defendants prepare and file federal income tax returns for customers on which they improperly claim false or fraudulent fuel tax credits using IRS Form 4136, "Credit for Federal Tax Paid on Fuels." The fuel tax credit is available only to taxpayers who operate

farm equipment or other off-highway business vehicles. Moreover, the equipment or vehicles using the fuel must not be registered for highway uses. The Defendants claim the fuel tax credit for fabricated and non-qualifying fuel purchases.

137.    Internal Revenue Code section 6421(a) provides a tax credit for fuel used in an off-highway business use. Off-highway business use is any off-highway use of fuel in a trade or business or in an income-producing activity where the equipment or vehicle is not registered and not required to be registered for use on public highways. Examples of off-highway business fuel use include: (1) in stationary machines such as generators, compressors, power saws, and similar equipment; (2) for cleaning purposes; and (3) in forklift trucks, bulldozers, and earthmovers.

138.    A highway vehicle is any "self-propelled vehicle designed to carry a load over public highways, whether or not it is also designed to perform other functions." A public highway includes any road in the United States that is not a private roadway. This includes federal, state, county, and city roads and streets. The following highway vehicles are not eligible for the fuel tax credit: passenger automobiles, motorcycles, buses, and highway-type trucks and truck tractors.

139.    In short, the fuel tax credit does not apply to passenger cars or other vehicles that are registered or required to be registered to drive on public highways.

140.    The Defendants claim the fuel tax credit for fabricated and non-qualifying fuel purchases.

141.    In 2013 and 2014, Marc claimed the fuel tax credit on at least the following number of tax returns:

| Year Returns Prepared | Total Returns Marc Prepared | Returns Claiming Fuel Tax Credit |
|---|---|---|
| 2013 | 247 | 71 |
| 2014 | 267 | 159 |

142.    In 2015, 2016, 2017, and 2018, the Defendants claimed the fuel tax credit on at least the following number of tax returns:

| Preparer | Prepared in 2015 | Prepared in 2016 | Prepared in 2017 | Prepared in 2018 |
|---|---|---|---|---|
| Advanced Tax Services (Total Claiming FTC) | 416 | 298 | 126 | 86 |
| Tiana Character | 2 | 50 | 15 | 1 |
| Dosuld Pierre | 45 | 36 | 44 | 5 |
| LeNorris LaMoute | 28 | 21 | 39 | 19 |
| Shirleen Thales | N/A | N/A | N/A | 41 |

**Customer 23**

143.    For example, Marc prepared the 2013 federal income tax return of Customer 23 of Gainesville, Florida.  Customer 23 received wages totaling $3,792 and unemployment income in the amount of $700 in 2013.  Marc falsely reported that Customer 23 purchased 7,548 gallons of fuel for off-highway business use.  Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 23 would have incurred a gas expense in the amount of $15,096, or more than three times the amount of his combined wages and unemployment income.  Marc claimed a bogus fuel tax credit in the amount of $1,381, and a bogus refund of $1,951 on Customer 23's 2013 tax return.

**Customer 24**

144.    Marc prepared the 2013 federal income tax return of Customer 24 of Gainesville, Florida.  Customer 24 received wages totaling $2,653 (Marc only reported $2,617 of those wages) and other, non-wage income totaling $2,779 (Marc only reported $2,232 of that income) in 2013.  Marc falsely reported that Customer 24 purchased 8,987 gallons of fuel for off-highway business use.  Assuming, conservatively, that the gas was purchased at $2.00 per gallon,

Customer 24 would have incurred a gas expense in the amount of $17,974, more than double the amount of his total income. Marc claimed a bogus fuel tax credit in the amount of $1,645, and a bogus refund of $1,537 on Customer 24's 2013 tax return.

### Customer 25

145.    Similarly, Marc prepared the 2012 federal income tax return of Customer 25 of Gainesville, Florida. Customer 25 did not receive any reported income in 2012. Marc falsely reported on line 7 of the tax return that Customer 25 received "HSH" income totaling $5,845. Marc also falsely reported that $280 in taxes were withheld from Customer 25's phony income based on amounts purportedly reported on a non-existent Form 1099 (as discussed in paragraphs 155-158, *infra*). Marc then falsely reported that Customer 25 purchased 3,945 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 25 would have incurred a gas expense in the amount of $7,890. Marc claimed a bogus fuel tax credit in the amount of $722. Thus, Marc claimed a fabricated EITC in the amount of $475 and a bogus refund of $1,404 on Customer 25's 2012 tax return.

### Customer 26

146.    Marc prepared the 2012 and 2013 federal income tax returns of Customer 26 of Gainesville, Florida. In 2012, Customer 26 received wages totaling $4,023. Marc falsely reported on line 7 of the tax return that Customer 26 received "HSH" income totaling $4,000, and falsely reported Customer 26's total income as $8,023. Marc also falsely reported that $240 in taxes were withheld from Customer 26's phony "HSH" income based on amounts purportedly reported on a non-existent Form 1099 (as discussed in paragraphs 155-158, *infra*). Marc then falsely reported that Customer 26 purchased 3,600 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 26 would

have incurred a gas expense in the amount of $7,200. Marc claimed a bogus fuel tax credit in the amount of $659. Thus, Marc claimed a fabricated EITC in the amount of $456 and a bogus refund of $1,645 on Customer 26's 2012 tax return.

147.    In 2013, Customer 26 received wages reported on two Forms W-2 totaling $6,471, but only the wages from one Form W-2, in the amount of $4,312, was reported on his tax return. Marc falsely reported that Customer 26 purchased 7,765 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 26 would have incurred a gas expense in the amount of $15,530, or more than double the amount of Customer 26's wages. Marc claimed a bogus fuel tax credit in the amount of $1,421 and a bogus refund of $1,752 on Customer 26's 2013 tax return.

148.    LaMoute prepared the 2014 federal income tax return of Customer 26. In 2014, Customer 26 received wages totaling $10,258. LaMoute falsely reported that Customer 26 purchased 6,810 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 26 would have incurred a gas expense in the amount of $13,620, more than Customer 26's wages. LaMoute claimed a bogus fuel tax credit in the amount of $1,246 and a bogus refund of $1,571 on Customer 26's 2014 tax return.

**Customer 27**

149.    LaMoute prepared the 2016 federal income tax return of Customer 27 of Gainesville, Florida. In 2016, Customer 27 received income through a pension from the State of Florida, IRA or annuity distributions, and social security totaling $37,567. Customer 27 was not employed in 2016 and did not own or operate a business. LaMoute falsely reported that Customer 27 purchased 7,855 gallons of fuel for off-highway business use and 9,875 gallons of fuel for other nontaxable use, a total of 17,730 gallons of fuel. Assuming, conservatively, that

41

the gas was purchased at $2.00 per gallon, Customer 27 would have incurred a gas expense in the amount of $35,460. LaMoute claimed a bogus fuel tax credit in the amount of $3,244 and a bogus refund of $4,181 on Customer 27's 2016 tax return.

**Customer 18 (con't)**

150.    As discussed in paragraphs 115-118, *supra*, a preparer at Advanced Tax Services claimed a bogus fuel tax credit on the 2017 tax return of Customer 18.

151.    Customer 18's 2015 and 2016 federal income tax returns were also prepared at Advanced Tax Services, and also claimed bogus fuel tax credits.

152.    LaMoute prepared Customer 18's 2015 tax return. According to IRS records, in 2015, Customer 18's sole income came from social security in the amount of $9,632. Customer 18's 2015 tax return, however, reports purported wage income totaling $5,547. LaMoute falsely reported that Customer 18 purchased 5,481 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 18 would have incurred a gas expense in the amount of $10,962. LaMoute claimed a bogus fuel tax credit in the amount of $1,003, and thereby claimed a bogus refund in the amount of $2,302 on Customer 18's 2015 tax return.

153.    Pierre prepared Customer 18's 2016 tax return. On Customer 18's 2016 tax return, which reports self-employment income totaling $1,527 and social security benefits totaling $9,657, Pierre falsely reported that Customer 18 purchased 6,652 gallons of fuel for non-taxable use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 18 would have incurred a gas expense in the amount of $13,304, more than his total reported income. Pierre claimed a bogus fuel tax credit in the amount of $1,217, and thereby claimed a bogus refund in the amount of $1,001 on Customer 18's 2016 tax return.

**Customers 19 and 20 (con't)**

154.    Pierre prepared the 2016 federal income tax return of Customers 19 and 20. Customers 19 and 20 received wages totaling $19,777 in 2016.  Pierre falsely reported that Customers 19 and 20 purchased 3,478 gallons of fuel for non-taxable use.  Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customers 19 and 20 would have incurred a gas expense in the amount of $6,956, or over 35% of their reported income.  Pierre claimed a bogus fuel tax credit in the amount of $636, and a bogus refund of $1,559 on the 2016 tax return of Customers 19 and 20.

### Reporting False Tax Withholdings Far Exceeding Amounts Actually Withheld and Reported on Forms W-2

155.    The Defendants prepare tax returns on which they falsely report the amount of taxes withheld from customers' income far in excess of the taxes actually withheld as reported on Forms W-2 issued to the customers by their employers.

156.    Employers are required to compute and withhold from their employees' wages federal income, social security, and Medicare taxes.  At the end of a tax year, the amount withheld from an employee's wages is a fixed and certain number.  The final amount withheld is typically reported on a Form W-2.  The Form W-2 is sent to the taxpayer from the employer and later filed by the taxpayer or his tax preparer along with the tax return.

157.    The Defendants disregard the federal tax withholdings reported on the Form W-2 and instead report a far larger amount on the tax return.  By falsely claiming that a larger amount of tax was withheld from customers' income, the Defendants falsely claim a larger refund of taxes allegedly withheld.  Fabricating the withholding amounts reported on customers' tax returns in contravention of the amounts reported on customers' Forms W-2 provided to the Defendants constitutes outright fraud and is a serious obstruction of tax administration.

158.    The Defendants also often report that a customer received wages or "HSH" income, and that taxes were withheld from these reported wages or "HSH" income, when, in fact, the customer did not receive any wages or "HSH" income and, as a result, no taxes were withheld. The Defendants then claim a bogus refund of taxes purportedly withheld from non-existent wages or "HSH" income that the Defendants fabricated (*see* Customers 25 and 26, paragraphs 146-149, *supra*).

159.    In other instances, the Defendants total all of the amounts withheld from a customer's wages (federal income taxes, social security, and Medicare taxes) as reported on a Form W-2 or pay stub, and falsely report this total amount as the amount of income taxes withheld.

160.    Frequently, in connection with reporting fabricated wages and withholdings, the Defendants also falsely claim that the customer had a business through which the customer incurred expenses, resulting in a loss. The bogus business loss that the Defendants report on the customer's tax return results in the return claiming a larger bogus refund of the phony withholdings reported on the return.

**Customer 30**

161.    For example, Character prepared the 2016 federal income tax return of Customer 30 of Orlando, Florida. Customer 30 was employed as a supervisor at a pipe manufacturer in 2016. Customer 30 did not own or operate a business. Customer 30 provided Character with a copy of his paystub and Form W-2; the Form W-2 showed that he received wages totaling $54,908 and had taxes withheld in the amount of $7,303.

162.    Character falsely reported on the 2016 tax return that Customer 30 received wages totaling $62,057 ($7,149 more than reported on his Form W-2) and had taxes withheld in the

amount of $11,645 ($4,342 more than reported on his Form W-2). The reported taxes withheld equaled the amount of his tax withheld, Medicare withholdings, and social security withholdings, as reflected on the paystub Customer 30 provided to Character. By falsely claiming that these combined amounts constituted the tax withheld, Character falsely increased Customer 30's refund by $4,342.

163.   In addition, Character falsely reported on the Schedule C attached to the 2016 tax return that Customer 30 owned a business, not identified by name or type of business, through which Customer 30 had no sales and received no gross receipts, but incurred $30,211 in expenses, including car and truck expenses ($13,079), renting or leasing business property ($10,500), deductible meals and entertainment ($1,800), and utilities ($4,832).  Customer 30 did not have any such business expenses and did not discuss owning a business with Character.  By reporting the fabricated business expenses, Character claimed a bogus EITC in the amount of $2,700 and, by also reporting the fabricated withholdings, claimed a bogus refund of $14,802 on Customer 30's 2016 tax return.  Customer 30 was charged $738 to have this return prepared.

164.   Character also prepared Customer 30's 2015 and 2017 federal income tax returns. Customer 30 received wages totaling $55,741 in 2015.  On the Schedule C attached to the 2015 tax return, Character falsely reported that Customer 30 owned a business, not identified by name or type of business, through which Customer 30 had no sales and received no gross receipts, but incurred $27,240 in expenses, all purportedly for car and truck expenses.  On both the 2015 and 2016 tax returns, Character falsely reported that Customer 30 drove his personal vehicle exactly 9,986 miles for the non-existent business, a number that, even if it had not been entirely fabricated, does not equate to the dollar amount of the claimed vehicle expenses on the return. On the Form 8867 attached to the return, Character falsely reported that Customer 30 provided

records of gross receipts, even though Customer 30 did not own a business and Character did not report any gross receipts on the Schedule C. As a result, Character falsely claimed an EITC in the amount of $3,355 and a bogus refund in the amount of $12,180.

165. Customer 30 received wages totaling $60,504 in 2017. On the Schedule C attached to the 2017 tax return, Character falsely reported that Customer 30 had a lawn service business, through which Customer 30 received $5,800 in gross receipts, but incurred $28,922 in expenses, including for advertising ($875), car and truck expenses ($8,847), renting business property ($12,700), supplies ($1,900), and utilities ($4,600). Customer 30 did not have a lawn care business and did not tell Character that he had a lawn care business or the reported expenses. In addition, Character falsely reported on the Schedule A attached to the return that Customer 30 incurred unreimbursed employee business expenses in the amount of $36,545, or over 60% of his wages, when Customer 30 did not incur any such expenses, did not provide this amount to Character, and, as with the fabricated expenses reported on his 2015 and 2016 tax returns, was unaware that Character reported this false information on his return. As a result, Character falsely claimed a bogus refund in the amount of $8,728 on Customer 30's 2017 tax return. The three Character-prepared returns falsely claimed that Customer 30 lost a total of $80,573 through a non-existent business in 2015, 2016, and 2017.

**Customer 31**

166. Character prepared the 2016 federal income tax return of Customer 31 of Orlando, Florida. In 2016, Customer 31 received wages totaling $2,927 and had taxes withheld in the amount of $247, as reported to the IRS on a Form W-2. On Customer 31's 2016 tax return, Character falsely reported that Customer 31 received wages totaling $12,882 ($9,955 more than reported on her Form W-2) and had taxes withheld in the amount of $2,247 ($2,000 more than

reported on her Form W-2). By claiming this fabricated amount of tax withheld from falsely inflated reported wages, Character falsely increased Customer 31's refund by $2,000.

### Customer 32

167.    Character prepared the 2016 federal income tax return of Customer 32 of Orlando, Florida.  In 2016, Customer 32 received wages totaling $14,395 and had taxes withheld in the amount of $1,287, as reported to the IRS on a Form W-2. On Customer 32's 2016 tax return, Character falsely reported that Customer 32 received wages totaling $24,396 ($10,001 more than reported on her Form W-2) and had taxes withheld in the amount of $3,287 ($2,000 more than reported on her Form W-2). Character also falsely reported on the Schedule C attached to the tax return that Customer 32 owned a business, not identified by name or type of business, though which she had no sales and received no gross receipts, but incurred expenses totaling $14,400 for renting business property ($9,800) and utilities ($4,600). By falsely reporting higher wages and higher tax withholdings, but then offsetting the reported additional income (in the form of the fabricated wages) by claiming a phony business loss, Character claimed a bogus refund of $3,662 on Customer 32's 2016 tax return.

### Customer 33

168.    Thales prepared the 2017 federal income tax return of Customer 33 of Gainesville, Florida.  In 2017, Customer 33 received wages totaling $1,562 and had taxes withheld in the amount of $109, as reported to the IRS on Forms W-2. On Customer 33's 2017 tax return, Thales falsely reported that Customer 33 received wages totaling $788 ($774 less than reported on his Forms W-2) and had taxes withheld in the amount of $4,047 ($3,938 more than reported on his Forms W-2). By falsely reporting higher tax withholdings, Thales claimed a bogus refund of $3,296 on Customer 33's 2017 tax return.

**Customer 34**

169.    LaMoute prepared the 2017 federal income tax return of Customer 34 of

Gainesville, Florida.  In 2017, Customer 34 received wages totaling $4,146 and had taxes

withheld in the amount of $1,149, as reported to the IRS on Forms W-2. On Customer 34's 2017

tax return, LaMoute falsely reported that Customer 34 received wages totaling $11,707 ($7,561

more than reported on her Forms W-2) and had taxes withheld in the amount of $2,960 ($1,811

more than reported on her Forms W-2). By falsely reporting higher tax withholdings, LaMoute

claimed a bogus refund of $9,161 on Customer 34's 2017 tax return.

**Customer 35**

170.    Pierre prepared the 2017 federal income tax return of Customer 35 of Gainesville,

Florida.  In 2017, Customer 35 received wages totaling $7,883 and had taxes withheld in the

amount of $51, as reported to the IRS on a Form W-2. On Customer 35's 2017 tax return, Pierre

falsely reported that Customer 35 received wages totaling $7,244 ($639 less than reported on her

Form W-2) and had taxes withheld in the amount of $952 ($901 more than reported on her Form

W-2). By falsely reporting higher tax withholdings, Pierre claimed a bogus refund of $7,891 on

Customer 35's 2017 tax return.

**Customer 36**

171.    Marc prepared the 2017 federal income tax return of Customer 36 of Orlando,

Florida.  In 2017, Customer 36 received wages totaling $6,516 and had taxes withheld in the

amount of $360, as reported to the IRS on Forms W-2. On Customer 36's 2017 tax return, Marc

falsely reported that Customer 36 received wages totaling $22,731 ($16,215 more than reported

on his Forms W-2) and had taxes withheld in the amount of $2,825 ($2,465 more than reported

on his Forms W-2). Marc also falsely reported on the Schedule A attached to the return that

48

Customer 36 incurred $18,300 in unreimbursed employee business expenses. By falsely

reporting higher tax withholdings, and then claiming false itemized deductions, Marc claimed a

bogus refund of $2,789 on Customer 36's 2017 tax return.

### Improperly Preparing and Filing Returns based on Pay Stubs

172.    The Defendants also prepare and file federal income tax returns using customers'

end-of-year pay stubs and then file their customers' tax returns without valid Forms W-2.

173.    Federal tax returns for wage earners must be prepared using Forms W-2. Using

pay stubs to prepare and file tax returns is improper and violates IRS rules. Moreover, end-of-

year pay stubs frequently omit income and distributions that are shown on employer-issued

Forms W-2. Thus, preparing and filing federal income tax returns based on information from

end-of-year pay stubs inevitably results in errors and omissions on federal tax returns, which

necessarily interferes with the administration and enforcement of the internal revenue laws.

174.    The Defendants know that using paystubs to prepare and file returns violates IRS

rules and regulations because in order to participate in the IRS's electronic filing program, all

electronic filers must acknowledge that they will comply with the IRS's requirements, which

expressly prohibit filing returns prepared with pay stubs and without genuine Forms W-2.

175.    The Defendants begin soliciting customers in December by falsely telling

customers that their returns can be prepared using their most recent paystub. Advanced Tax

Services opens before the end of the tax year, before customers know how much income they

earned and taxes they owe for the year, and before employers are able to issue Forms W-2 to

their employees. Forms W-2 are not available to employees before the end of the calendar tax

year, and tax returns cannot be filed before January of the processing year.

176.    By preparing tax returns before the end of the tax year, the Defendants unfairly solicit business before competitors.

### Bogus Education Credits

177.    The Defendants, and the tax return preparers acting at the Defendants' direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American opportunity tax credit, on customers' federal income tax returns.  Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and the tax return preparers acting at the Defendants' direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to generate a larger bogus refund.

### Customer 37

178.    Marc prepared 2012 and 2013 federal income tax returns of Customer 37 of Gainesville, Florida.  Customer 37 did not attend college or incur any education-related expenses in 2012 or 2013.

179.    In 2012, Customer 37 received wages totaling $14,721 through two jobs, although Marc did not report the income from one of the jobs, and thus only reported income totaling $13,702 on the 2012 tax return.  Marc falsely claimed that Customer 37 incurred education-related expenses, purportedly for attending Santa Fe College, in the amount of $2,600.  By reporting the fabricated education expense, Marc claimed a bogus American opportunity tax credit in the amount of $860 and a nonrefundable education credit in the amount of $16 on Customer 37's 2012 tax return.  Marc claimed a bogus refund of $6,424 on Customer 37's 2012 tax return.

180.    In 2013, Customer 37 received wages totaling $18,672. Marc falsely claimed that Customer 37 incurred education-related expenses, purportedly for attending Santa Fe College, in the amount of $3,785. By reporting the fabricated education expense, Marc claimed a bogus American opportunity tax credit in the amount of $978 on Customer 37's 2012 tax return. Marc also falsely reported that Customer 37 purchased 7,981 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 37 would have incurred a gas expense in the amount of $15,962, or over 85% of his income. Marc thus claimed a bogus fuel tax credit in the amount of $1,461, and a bogus refund in the amount of $8,658 on Customer 37's 2013 tax return.

**Customer 38**

181.    Thales prepared the 2017 tax return of Customer 38 of Gainesville, Florida. Thales falsely reported that Customer 38 attended the City College, Fort Lauderdale Campus, and incurred education-related expenses in the maximum reportable amount of $4,000, and thereby claimed a bogus American opportunity tax credit in the maximum amount of $1,000 on Customer 38's 2017 tax return. Thales claimed a bogus refund of $8,187 on Customer 38's 2017 tax return.

182.    Even when customers incur education-related expenses, the Defendants often inflate the amount of the expense (and the resulting amount of the credit) claimed on the tax return.

**Customer 39**

183.    Pierre prepared the 2017 federal income tax return of Customer 39 of Gainesville, Florida. According to records provided to the IRS, in 2017, Customer 39 incurred tuition expenses totaling $4,470 to attend Santa Fe College, but also received scholarships and grants

51

totaling $2,684. Pierre falsely reported on the 2017 tax return that Customer 39 incurred education-related expenses in the maximum reportable amount of $4,000, and thereby claimed a bogus American opportunity tax credit in the maximum amount of $1,000 and a nonrefundable education credit in the amount of $423 on Customer 39's 2017 tax return. Thus, Pierre claimed a bogus refund of $1,592 on Customer 39's 2017 tax return.

### Customer 40

184.    Customer 40 of Winter Haven, Florida had his 2017 federal income tax return prepared at the Advanced Tax Services store at 112 North Orange Blossom Trail in Orlando. According to records provided to the IRS, in 2017, Customer 40 incurred tuition expenses totaling $4,159 to attend Seminole State College, but also received scholarships and grants totaling $3,037. The preparer falsely reported on the 2017 tax return that Customer 40 incurred education-related expenses in the maximum reportable amount of $4,000, and thereby claimed a bogus American opportunity education credit in the maximum amount of $1,000 on Customer 40's 2017 tax return. The preparer also claimed a bogus fuel tax credit in the amount of $364. Thus, the Advanced Tax Services preparer claimed a bogus refund of $1,822 on Customer 40's 2017 tax return.

### Unconscionable and Undisclosed Fees

185.    The Defendants charge unconscionably high fees to prepare tax returns, which are typically charged without customers' knowledge. The Defendants charge these high fees to prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

186.    The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns. The Defendants do not disclose the full amount of the fee and, when

having the customer sign forms showing the fee, cover the fee with a hand or a piece of paper and do not explain to the customer what the customer is signing.

187.    The Defendants charge additional fees for each form and schedule (such as a Schedule C or a Form 8863 for an education credit) attached to the Form 1040 tax return. The Defendants charge separate fees for forms and schedules such as the electronic filing authorization (Form 8879) which is required for e-filing, the EITC qualifying child form (Schedule EIC), and the related EITC due diligence checklist (Form 8867), which must be completed in connection with a claim for the EITC. These fees result in a total tax return preparation fee much higher than the amount advertised, often $1,000 or more.

188.    The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants to prepare and file false or fraudulent tax returns claiming excessive refunds based on bogus claims and associated forms and schedules.

189.    Because the Defendants target low-to-moderate-income individuals, the high fees frequently can pose a significant financial hardship for customers.  Customers may be required to pay back the improper refunds that they receive.  Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees.  Thus, customers are then out-of-pocket the high fees that the Defendants charged.

190.    The Defendants also routinely and intentionally fail to disclose to customers all fees charged.  The Defendants present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing.  Alternatively, the Defendants tell customers one amount for fees and

then later increase the fees without the customers' knowledge or consent. Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

191.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund. By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

192.    The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

### Failure to Provide Customers with Copies of their Completed Tax Returns in Violation of 26 U.S.C. § 6107(a)

193.    The Defendants fail to provide customers with copies of their completed tax returns. The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer. For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return. The Defendants' failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from their customers.

194. Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

195. Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C, Forms Schedule A, and Forms 2106, "Employee Business Expenses." This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms.

**Additional Examples of the Defendants' False or Fraudulent Tax Return Preparation**

**Customers 41 and 42**

196. Customers 41 and 42 of Gainesville, Florida had their 2012, 2013, 2014, 2015, 2016, and 2017 federal income tax returns prepared at Advanced Tax Services. Marc prepared the 2012 and 2013 tax returns, LaMoute prepared the 2014 tax return, Pierre prepared the 2015 and 2016 tax returns, and Thales prepared the 2017 tax return. Outside of his job, Customer 41 also sells t-shirts, and doing so, may lose up to a couple of thousand dollars annually.

197. On the 2012 tax return of Customers 41 and 42, Marc falsely reported that Customer 41 owned a "merchandise" business through which he received gross receipts totaling $3,254, but incurred expenses totaling $9,213, including for an office ($2,457), deductible meals and entertainment ($4,578), and phone and internet ($2,178). Marc also falsely claimed that Customer 42 was a student at Santa Fe College and incurred education-related expenses in the amount of $2,915. Santa Fe College did not provide any records to the IRS showing that Customer 42 was a student or incurred any such expenses in 2012. By reporting these fabricated

education expenses, Marc claimed bogus education credits in the amounts of $368 and $891 on the 2012 tax return of Customers 41 and 42. Thus, Marc claimed a bogus refund of $7,812 on the 2012 tax return of Customers 41 and 42.

198.    In 2013, Customers 41 and 42 received wages totaling $40,242 through their jobs at a fast food restaurant. On the Schedule C attached to the 2013 tax return of Customers 41 and 42, Marc falsely reported that Customer 41 owned a business, not identified by name or type of business, through which Customer 41 had no sales and received no gross receipts, but incurred $11,052 in expenses, including car and truck expenses ($8,474) and renting or leasing business property ($2,578). On the Form 8867 attached to the return, Marc falsely reported that Customer 41 provided records of income and expenses, even though Customer 41 did not own a business and Marc did not report any gross receipts or income on the Schedule C.

199.    On the Schedule A attached to the tax return, Marc falsely reported that Customers 41 and 42 donated $15,879, or over 39% of their reported income, in cash to charity. Marc also falsely reported that Customers 41 and 42 purchased 7,864 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customers 41 and 42 would have incurred a gas expense in the amount of $15,728, or over 39% of their reported income. Marc claimed a bogus fuel tax credit in the amount of $1,439. Marc claimed a phony EITC in the amount of $4,044 and a bogus refund of $8,896 on the 2013 tax return of Customers 41 and 42.

200.    In 2014, Customers 41 and 42 received wages totaling $46,244. On the Schedule C attached to the 2014 tax return of Customers 41 and 42, LaMoute falsely reported that Customer 41 owned a business, identified as his *employer*, Chowdhurry Hines (as identified on the Form W-2 issued to Customer 41), through which Customer 41 had no sales and received no

gross receipts, but incurred $18,719 in expenses, including car and truck expenses ($17,944),

taxes and licenses ($50), travel ($400), and deductible meals and entertainment ($275). On the

Form 8867 attached to the return, LaMoute falsely reported that Customer 41 provided records

of expenses and gross receipts, even though Customer 41 did not own a business and LaMoute

did not report any gross receipts on the Schedule C. LaMoute also falsely reported that

Customers 41 and 42 purchased 5,571 gallons of fuel for off-highway business use. Assuming,

conservatively, that the gas was purchased at $2.00 per gallon, Customers 41 and 42 would have

incurred a gas expense in the amount of $11,142, or over 24% of their reported income.

LaMoute claimed a bogus fuel tax credit in the amount of $1,019. LaMoute claimed a phony

EITC in the amount of $4,562 and a bogus refund of $9,165 on the 2014 tax return of Customers

41 and 42.

201.    In 2015, Customers 41 and 42 received wages totaling $38,260. On the Schedule

C attached to the 2015 tax return of Customers 41 and 42, Pierre falsely reported that Customer

41 owned a business, identified as his *employer*, Chowdhurry Hines (as identified on the Form

W-2 issued to Customer 41), through which Customer 41 had no sales and received no gross

receipts, but incurred $19,911 in expenses, all for purported car and truck expenses. Pierre also

falsely reported that Customers 41 and 42 purchased 2,945 gallons of fuel for off-highway

business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon,

Customers 41 and 42 would have incurred a gas expense in the amount of $5,890, or over 15%

of their reported income. Pierre claimed a bogus fuel tax credit in the amount of $539. Pierre

claimed a phony EITC in the amount of $5,548 and a bogus refund of $9,299 on the 2015 tax

return of Customers 41 and 42.

202.    In 2016, Customers 41 and 42 received wages totaling $55,557. On the Schedule C attached to the 2016 tax return of Customers 41 and 42, Pierre falsely reported that Customer 41 owned a business, identified as his *employer*, Chowdhurry Hines (as identified on the Form W-2 issued to Customer 41), through which Customer 41 had no sales and received no gross receipts, but incurred $35,139 in expenses, all for purported car and truck expenses. Pierre also falsely reported that Customers 41 and 42 purchased 2,345 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customers 41 and 42 would have incurred a gas expense in the amount of $4,690. Pierre claimed a bogus fuel tax credit in the amount of $429. Pierre claimed a phony EITC in the amount of $5,572 and a bogus refund of $9,679 on the 2016 tax return of Customers 41 and 42.

203.    In 2017, Customers 41 and 42 received wages totaling $54,287. On the Schedule C attached to the 2017 tax return of Customers 41 and 42, Thales falsely reported that Customer 41 owned a business, identified as his *employer*, Chowdhurry Hines (as identified on the Form W-2 issued to Customer 41), through which Customer 41 had no sales and received no gross receipts, but incurred $32,269 in expenses, all for purported car and truck expenses. As a result, Thales claimed a phony EITC in the amount of $6,318 and a bogus refund of $9,653 on the 2017 tax return of Customers 41 and 42.

204.    The fabricated business losses claimed across these 6 tax returns total $123,049.

**Customer 43**

205.    Customer 43 of Gainesville, Florida had her 2013, 2014, 2015, 2016, and 2017 federal income tax returns prepared at Advanced Tax Services. Marc prepared the 2013 tax return, Pierre prepared the 2014, 2015, and 2017 tax returns, and LaMoute prepared the 2016 tax return.

58

206. Customer 43 received wages totaling $24,099 in 2013. On the 2013 tax return of Customer 43, Marc falsely reported that Customer 43 owned a business, not identified by name or type of business, through which she had no sales and received no gross receipts, but incurred expenses totaling $11,276, including for car and truck expenses ($4,676) and rent ($6,600), a personal expense. On the Schedule A attached to the tax return, Marc falsely reported that Customer 43 donated $4,789, or over 19% of her reported income, in cash to charity. Marc also falsely reported that Customer 43 purchased 2,456 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 43 would have incurred a gas expense in the amount of $4,912, or over 20% of her reported income. Marc claimed a bogus fuel tax credit in the amount of $449. Marc claimed a bogus refund of $2,296 on Customer 43's 2013 tax return.

207. Customer 43 received wages totaling $31,690 in 2014. On the 2014 tax return of Customer 43, Pierre falsely reported that Customer 43 owned a business, not identified by name or type of business, through which she had no sales and received no gross receipts, but incurred expenses totaling $9,312, all for purported car and truck expenses. On the Schedule A attached to the tax return, Pierre falsely reported that Customer 43 incurred general sales taxes in the amount of $8,754, or over 27% of her reported income, and incurred $10,965, or over 34% of her wages, in unreimbursed employee business expenses. Pierre also falsely reported that Customer 43 purchased 4,237 gallons of fuel for off-highway business use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 43 would have incurred a gas expense in the amount of $8,474, or over 26% of her reported income. Pierre claimed a bogus fuel tax credit in the amount of $775. Pierre claimed a bogus refund of $2,474 on Customer 43's 2014 tax return.

208.    Customer 43 received wages totaling $31,175 in 2015.  On the Schedule A attached to Customer 43's 2015 tax return, Pierre falsely reported that Customer 43 incurred general sales taxes in the amount of $7,854, or over 25% of her reported income. Pierre falsely reported that Customer 43 donated $5,899, or over 18% of her reported income, in cash to charity.  Pierre also falsely reported that Customer 43 incurred $15,942, or over 51% of her wages, in unreimbursed employee business expenses. Pierre also falsely reported that Customer 43 purchased 3,310 gallons of fuel for non-taxable use.  Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 43 would have incurred a gas expense in the amount of $6,620, or over 21% of her reported income.  Pierre claimed a bogus fuel tax credit in the amount of $606.

209.    Pierre also falsely claimed that Customer 43, who was a student at Santa Fe College in 2015, incurred education-related expenses in the maximum reportable amount of $4,000.  In reality, according to records that Santa Fe College provided to the IRS on a Form 1098-T, Customer 43 incurred tuition expenses of $414 in 2015.  By reporting the falsely inflated education expense, Pierre claimed a bogus American opportunity tax credit in the maximum amount of $1,000 on Customer 43's 2015 tax return.  Pierre claimed a bogus refund of $3,296 on Customer 43's 2015 tax return.

210.    Customer 43 received wages totaling $30,637 in 2016.  On the Schedule A attached to Customer 43's 2016 tax return, LaMoute falsely reported that Customer 43 incurred general sales taxes in the amount of $8,977, or over 29% of her reported income.  LaMoute falsely reported that Customer 43 donated $3,878 in cash to charity.  LaMoute also falsely reported that Customer 43 incurred $21,819, or over 71% of her wages, in unreimbursed employee business expenses. LaMoute also falsely reported that Customer 43 purchased 3,754

gallons of fuel for non-taxable use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 43 would have incurred a gas expense in the amount of $7,508, or over 24% of her reported income. LaMoute claimed a bogus fuel tax credit in the amount of $687.

211.    LaMoute also falsely claimed that Customer 43, who was a student at Santa Fe College in 2016, incurred education-related expenses in the amount of $3,879. In reality, according to records that Santa Fe College provided to the IRS on a Form 1098-T, Customer 43 incurred tuition expenses of $670 in 2016. By reporting the falsely inflated education expense, LaMoute claimed a bogus American opportunity tax credit in the amount of $988 on Customer 43's 2016 tax return. LaMoute claimed a bogus refund of $3,190 on Customer 43's 2016 tax return.

212.    Customer 43 received wages totaling $32,614 in 2017. On the 2017 tax return of Customer 43, Pierre falsely reported that Customer 43 owned a business, identified as her *employer*, Shandshands Teaching Hospital and Clinics (as identified on the Form W-2 issued to Customer 43), which she had no sales and received no gross receipts, but incurred expenses totaling $21,289, all for purported car and truck expenses. Pierre also falsely reported that Customer 43 purchased 3,175 gallons of fuel for non-taxable use. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 43 would have incurred a gas expense in the amount of $6,350, or over 19% of her reported income. Pierre claimed a bogus fuel tax credit in the amount of $581.

213.    Pierre also falsely claimed that Customer 43, who was a student at Santa Fe College in 2017, incurred education-related expenses in the amount of $3,719. In reality, according to records that Santa Fe College provided to the IRS on a Form 1098-T, Customer 43

incurred tuition expenses of $956 in 2017.  By reporting the falsely inflated education expense, Pierre claimed a bogus American opportunity tax credit in the amount of $972 and a nonrefundable education credit in the amount of $94 on Customer 43's 2017 tax return.  Pierre claimed a bogus refund of $3,313 on Customer 43's 2017 tax return.

### Customer 44

214.     Customer 44 of Alachua, Florida had his 2014, 2015, 2016, and 2017 federal income tax returns prepared at Advanced Tax Services. Pierre prepared the 2014, 2015, and 2016 tax returns, and Thales prepared the 2017 tax return.

215.     Customer 44, a correctional officer for the State of Florida, received wages totaling $34,886 in 2014.  On the 2014 tax return of Customer 44, Pierre falsely reported that Customer 44 owned a business, identified as being a correctional officer for the State of Florida (which is not a self-employed business), through which he had no sales and received no gross receipts, but incurred expenses totaling $8,439, all for purported car and truck expenses.  On the Schedule A attached to the tax return, Pierre falsely reported that Customer 44 incurred $18,438, or over 52% of his wages, in unreimbursed employee business expenses. Pierre falsely reported that Customer 44 incurred $11,109 in vehicle expenses, $5,687 in overnight travel expenses, and $3,284 in meals and entertainment expenses purportedly related to his job as a correctional officer. As a result of these false claims, Pierre claimed a fabricated EITC in the amount of $3,650 and a bogus refund of $7,365 on Customer 44's 2014 tax return.

216.     Customer 44 received wages totaling $36,919 in 2015.  On the 2015 tax return of Customer 44, Pierre falsely reported that Customer 44 owned a business, identified as being a correctional officer for the State of Florida, through which he had no sales and received no gross receipts, but incurred expenses totaling $12,473, all for purported car and truck expenses. As a

result of the phony business loss, Pierre claimed a fabricated EITC in the amount of $4,218 and a bogus refund of $8,127 on Customer 44's 2015 tax return.

217.     Customer 44 received wages totaling $37,102 in 2016.  On the 2016 tax return of Customer 44, Pierre falsely reported that Customer 44 had a business, identified as being a correctional officer for the State of Florida, through which he had no sales and received no gross receipts, but incurred expenses totaling $17,521, all for purported car and truck expenses. As a result of the phony business loss, Pierre claimed a fabricated EITC in the amount of $5,280 and a bogus refund of $8,474 on Customer 44's 2016 tax return.

218.     Customer 44 received wages totaling $44,283 in 2017.  On the 2017 tax return of Customer 44, Thales falsely reported that Customer 44 owned a business, identified as being a correctional officer for the State of Florida, through which he had no sales and received no gross receipts, but incurred expenses totaling $20,992, all for purported car and truck expenses. As a result of the phony business loss, Thales claimed a fabricated EITC in the amount of $4,577 and a bogus refund of $8,561 on Customer 44's 2017 tax return.

**Customer 45**

219.     Customer of Hawthorne, Florida had his 2012, 2013, 2014, 2015, 2016, and 2017 federal income tax returns prepared at Advanced Tax Services. Marc prepared the 2012 and 2013 tax returns, Pierre prepared the 2014, 2015, and 2016 tax returns, and Thales prepared the 2017 tax return.

220.     On the 2012 tax return of Customer 45, Marc also falsely reported that Customer 45 purchased 2,605 gallons of fuel for off-highway business use and 2,855 gallons of fuel for other nontaxable use.  Marc claimed a bogus fuel tax credit in the amount of $999. As a result, Marc claimed a bogus refund of $942 on Customer 45's 2012 tax return.

221.    In 2013, Customer 45 received wages totaling $42,353.  On the Schedule C attached to the 2013 tax return of Customers 45, Marc falsely reported that Customer 45 owned a business, not identified by name or type of business, through which Customer 45 had no sales and received no gross receipts, but incurred $10,504 in expenses, all for purported car and truck expenses.  On the Schedule A attached to the tax return, Marc falsely reported that Customer 45 incurred general sales taxes in the amount of $8,759 , or over 20% of his reported income, and donated $7,865, or over 18% of his reported income, in cash to charity. As a result, Marc claimed a bogus refund of $4,016 on Customer 45's 2013 tax return.

222.    In 2014, Customer 45 received wages totaling $42,128.  On the Schedule C attached to the 2014 tax return of Customer 45, Pierre falsely reported that Customer 45 had a business, not identified by name or type of business, through which Customer 45 had no sales and received no gross receipts, but incurred $16,767 in expenses, including car and truck expenses ($10,890) and travel ($5,877).  On the Schedule A attached to the tax return, Pierre falsely reported that Customer 45 incurred $21,009, or over 49% of his wages, in unreimbursed job-related expenses. Pierre falsely reported that Customer 45 incurred $11,132 in vehicle expenses and $9,877 in overnight travel expenses. As a result of these false claims, Pierre claimed a bogus refund of $4,215 on Customer 45's 2014 tax return.

223.    In 2015, Customer 45 received wages totaling $42,340.  On the Schedule A attached to the tax return, Pierre falsely reported that Customer 45 incurred $5,179 in general sales taxes and the exact same amount of $5,179 in cash contributions to charity.  Pierre also falsely reported that Customer 45 incurred $28,947, or over 68% of his wages, in unreimbursed job-related expenses. Pierre falsely reported that Customer 45 incurred $13,060 in vehicle expenses, $5,462 in parking fees, tolls, and transportation costs, $7,069 in overnight travel

expenses, and $6,712 in meals and entertainment expenses. As a result of these false claims, Pierre falsely reduced Customer 45's taxable income to zero and claimed a bogus refund of $4,223 on Customer 45's 2015 tax return.

224.    In 2016, Customer 45 received wages totaling $42,160.  On the Schedule A attached to the tax return, Pierre falsely reported that Customer 45 incurred $8,895 in general sales taxes and $5,897 in cash contributions to charity.  Pierre also falsely reported that Customer 45 incurred $22,279, or over 52% of his wages, in unreimbursed job-related expenses. Pierre falsely reported that Customer 45 incurred $7,895 in vehicle expenses, $12,095 in overnight travel expenses, and $4,577 in meals and entertainment expenses. As a result of these false claims, Pierre claimed a bogus refund of $4,116 on Customer 45's 2016 tax return.

225.    In 2017, Customer 45 received wages totaling $35,290.  On the Schedule A attached to the tax return, Thales falsely reported that Customer 45 incurred $7,899 in general sales taxes.  Thales also falsely reported that Customer 45 incurred $24,875, or over 70% of his wages, in unreimbursed job-related expenses. Thales reported that all of these fabricated job-related expenses were incurred for overnight travel. As a result of these false claims, Thales falsely reduced Customer 45's taxable income to zero and claimed a bogus refund of $3,892 on Customer 45's 2017 tax return.

### Harm Caused by the Defendants

226.    The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and many of their preparers prepare false or fraudulent tax returns that understate

65

their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

227. Defendants' conduct (and that of their preparers acting at their direction or with their knowledge and consent) harms the United States Treasury by causing lost tax revenue.

228. The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

229. Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants and their employees acting at the Defendants' direction and with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants, and their employees acting at their direction or with their knowledge and consent.

230. The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting their false claims on tax returns

and assessing and collecting lost tax revenues from the Defendants' customers. Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

231.    The Defendants' misconduct also harms the United States and the public because the Defendants train tax preparers, who have no previous tax return preparation experience, on how to prepare tax returns that make false or fraudulent claims. These Defendant-trained tax preparers, in turn, often open their own tax preparation stores using the Defendants' investments of the ill-gotten gains that the Defendants received for the preparation of tax returns, or using the income that the preparers received from the Defendants for the preparation of tax returns making false or fraudulent claims. In this manner, the preparation of false or fraudulent tax returns spreads like a wildfire.

232.    The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

233.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

234.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers. An injunction will serve the public interest

because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

### Count I
### Injunction under 26 U.S.C. § 7407

235.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

a.      Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b.      Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c.      Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d.      Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e.      Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

236.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also

68

anyone "who employs one or more persons" to prepare tax returns for compensation.

237.   Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, as shown above in paragraphs 5 through 234, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales also advise, instruct, direct, and cause tax return preparers and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions.  Accordingly, Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

238.   Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions. Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales, through the actions described above in paragraphs 5 through 234, also recklessly or intentionally disregard IRS rules or regulations. Marc, the sole member of Advanced Tax Services, Inc. and Genson Financial Group, LLC, and Character, the sole member of Character Financial Solutions, LLC, participated in and/or knew of the conduct subject to penalty under 26 U.S.C. § 6694 engaged in by employees of Marc, Character, Advanced Tax

Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, Marc's

and Character's wholly-owned entities, failed to provide reasonable and appropriate procedures

to prevent employees from engaging in conduct subject to penalty under 26 U.S.C. § 6694 and,

conversely, encouraged the filing of false tax returns.

239.    Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and

Shirleen Thales, and those acting in concert with them and at their direction, have continually

and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury

regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the

EITC without first conducting proper due diligence and documenting his or her compliance with

the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011). Not only do Marcgenson

Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales fail to conduct

proper due diligence or comply with the due diligence requirements, but they also advise,

encourage, and cause tax return preparers and employees to circumvent the due diligence

requirements and to ignore or disregard the information provided by customers.

240.    Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's,

and Shirleen Thales' failure to comply with the due diligence requirements for the EITC violates

Treasury Regulations and their willingness to falsify information to obtain the EITC for their

customers shows a reckless and/or intentional disregard of IRS rules and regulations.

241.    Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and

Shirleen Thales, and those acting in concert with them and at their direction, have continually

and repeatedly prepared federal income tax returns that claim the EITC for customers, where

Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales, and

those acting in concert with them and at their direction, have not conducted, let alone documented, the required due diligence procedures.

242. Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

243. Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer identify the actual paid preparer of the tax return.

244. Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, and Shirleen Thales' continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

245. Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, and Shirleen Thales' continual and repeated fraudulent or deceptive conduct in connection with the preparation of tax returns, including in training individuals to prepare false tax returns and in operating a tax preparation business where the preparation of false tax returns flourishes, substantially interferes with the proper administration of the internal revenue laws and falls within 26 U.S.C. § 7407(b)(1)(D), and Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales thus are subject to an injunction under 26 U.S.C. § 7407.

246. Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales, and those acting in concert with them and at their direction, have continuously and repeatedly guaranteed refunds to customers and guaranteed the allowance of tax credits, including but not limited to the EITC. This conduct falls within 26 U.S.C. § 7407(b)(1)(C), and

Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales thus are subject to an injunction under 26 U.S.C. § 7407.

247. If Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

248. Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, Shirleen Thales', Advanced Tax Services, Inc.'s, Genson Financial Group, LLC's, and Character Financial Solutions, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, Shirleen Thales', Advanced Tax Services, Inc.'s, Genson Financial Group, LLC's, and Character Financial Solutions, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

## Count II
### Injunction under 26 U.S.C. § 7408

249. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701

if injunctive relief is appropriate to prevent recurrence of such conduct.

250.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or

assists in, procures, or advises with respect to the preparation or presentation of a federal tax

return, refund claim, or other document knowing (or having reason to believe) that it will be used

in connection with any material matter arising under the internal revenue laws and knowing that

if it is so used it will result in an understatement of another person's tax liability. Under 26

U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate

to do an act," as well as "knowing of, and not attempting to prevent, participation by a

subordinate in an act."

251.    Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen

Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial

Solutions, LLC, through the actions detailed above in paragraphs 5 through 234, caused the

presentation and preparation of false, fraudulent, and abusive tax returns and other documents.

Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales,

prepare, assist, and/or advise with respect to the presentation and preparation of federal tax

returns for customers that they know will understate their correct tax liabilities, because

Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales,

knowingly prepare, assist, and/or advise with respect to the presentation and preparation of

returns claiming bogus expenses and deductions. Marcgenson Marc, Tiana Character, LeNorris

LaMoute, Dosuld Pierre, and Shirleen Thales procured and assisted the preparation of false and

fraudulent tax returns by filing and encouraging the preparation and filing of tax returns they

knew were false or fraudulent, and by employing, training, and supervising tax return preparers

engaging in tax fraud. Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

252.    Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales are likely to continue violating the law absent an injunction. Tax return preparation is a significant, if not primary, source of revenue for Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales. To maximize that income, Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales prepare, and instruct and direct tax return preparers and employees to prepare, false or fraudulent returns. That conduct, in turn, gives Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales a competitive edge over law-abiding preparers. It also provides a means for Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales to further exploit their customers by charging them unconscionably high fees, while Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, and Shirleen Thales' false or fraudulent tax return preparation simultaneously and callously exposes their customers to possible civil and criminal liability.

253.    If the Court does not enjoin Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The preparation of tax returns claiming improper expenses and deductions by Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, and Shirleen Thales, and those acting in concert with them and at their direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

254.    Section 7402 of the Internal Revenue Code authorizes a district court to issue

injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

255.    Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen

Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial

Solutions, LLC, through the actions described above in paragraphs 5 through 234, including, but

not limited to, intentionally understating their customers' tax liabilities and charging

unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally

understate their customers' tax liabilities, have engaged in conduct that substantially interferes

with the enforcement of the internal revenue laws.

256.    Unless enjoined, Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld

Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and

Character Financial Solutions, LLC, and those acting in concert with them and at their direction,

are likely to continue to engage in such improper conduct and interfere with the enforcement of

the internal revenue laws. If Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld

Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and

Character Financial Solutions, LLC are not enjoined from engaging in fraudulent and deceptive

conduct, the United States will suffer irreparable injury by providing federal income tax refunds

to individuals not entitled to receive them.

257.    While the United States will suffer irreparable injury if Marcgenson Marc, Tiana

Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc.,

Genson Financial Group, LLC, and Character Financial Solutions, LLC are not enjoined, the Defendants will not be harmed by being compelled to obey the law.

258.     Enjoining Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop the Defendants' illegal conduct and the harm it causes the United States and the Defendants' customers.

259.     The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

260.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

261.     Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, Shirleen Thales', Advanced Tax Services, Inc.'s, Genson Financial Group, LLC's, and Character Financial Solutions, LLC's conduct, described above in paragraphs 5 through 234, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them.  Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

262.     Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial

Solutions, LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

263.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.    That the Court find that Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.    That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC from acting as federal tax return preparers;

C.       That the Court find that Marcgenson Marc, Tiana Character, LeNorris LaMoute,

Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and

Character Financial Solutions, LLC have engaged in conduct subject to penalty under 26 U.S.C.

§ 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence

of that conduct;

D.       That the Court find that Marcgenson Marc, Tiana Character, LeNorris LaMoute,

Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and

Character Financial Solutions, LLC have engaged in conduct that interferes with the enforcement

of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of

that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.       That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a

permanent injunction prohibiting Marcgenson Marc, Tiana Character, LeNorris LaMoute,

Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and

Character Financial Solutions, LLC, and all those in active concert or participation with them,

from:

(1)      acting as federal tax return preparers or requesting, assisting in, or
directing the preparation or filing of federal tax returns, amended returns,
or other related documents or forms for any person or entity other than
themselves;

(2)      preparing or assisting in preparing federal tax returns that they know or
reasonably should know would result in an understatement of tax liability
or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. §
6694;

(3)      owning, operating, managing, working in, investing in, providing capital
or loans to, receiving fees or remuneration from, controlling, licensing,
consulting with, or franchising a tax return preparation business;

(4)     training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)     maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6)     engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC to immediately and permanently close all tax return preparation stores that they own directly or through any other entity, and whether those stores do business as Advanced Tax Services or under any other name;

G.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC own directly or through any other entity, and whether those stores do business as Advanced Tax Services or under any other name;

H.     That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions,

LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, or any other tax return preparation business to which they or any entity under their control is a party;

I.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, directly or through any other entity, from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC and any other business or name (including but not limited to Advanced Tax Services) through which they, or those acting at their direction, have at any time since 2013 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC or any other business or entity through which Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, or Character Financial Solutions, LLC prepare tax returns or own or franchise a tax return preparation business, a list of customers or any other customer information for customers for whom Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales,

Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, and any other business or name (including but not limited to Advanced Tax Services) through which Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, or those acting at their direction, have at any time since 2013 prepared a tax return; and (3) selling to <u>any</u> individual or entity any proprietary information pertaining to Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, and any other business or name (including but not limited to Advanced Tax Services) through which Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, or those acting at their direction, have at any time since 2013 prepared a tax return;

J.      That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC to disgorge to the United States the gross receipts (the amount of which is to be determined by the Court) that Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make or report grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2013 by Marcgenson Marc, Tiana Character,

LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson

Financial Group, LLC, and Character Financial Solutions, LLC, and at any tax preparation store

franchised, owned, or managed by Marcgenson Marc, Tiana Character, LeNorris LaMoute,

Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and

Character Financial Solutions, LLC;

  K.  That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order

requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen

Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial

Solutions, LLC to contact, within 30 days of the Court's order, by United States mail and, if an

e-mail address is known, by e-mail, all persons for whom Marcgenson Marc, Tiana Character,

LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson

Financial Group, LLC, and Character Financial Solutions, LLC, and their managers, employees,

and tax return preparers (including but not limited to those doing business under the name

Advanced Tax Services) prepared federal tax returns or claims for a refund from 2013 and

continuing through this litigation to inform them of the permanent injunction entered against

them, including sending a copy of the order of permanent injunction but not enclosing any other

documents or enclosures unless agreed to by counsel for the United States or approved by the

Court;

  L.  That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order

requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen

Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial

Solutions, LLC to produce to counsel for the United States, within 30 days of the Court's order, a

list that identifies by name, social security number, address, e-mail address, and telephone

number and tax period(s) all persons for whom Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Advanced Tax Services) prepared federal tax returns or claims for a refund since 2013;

M. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC since 2013;

N. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC (from 2013 to the present) within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales,

Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC provided a copy of the Court's order;

     O.     That the Court retain jurisdiction over Marcgenson Marc, Tiana Character, LeNorris LaMoute, Dosuld Pierre, Shirleen Thales, Advanced Tax Services, Inc., Genson Financial Group, LLC, and Character Financial Solutions, LLC and over this action to enforce any permanent injunction entered against them;

     P.     That the United States be entitled to conduct discovery to monitor Marcgenson Marc's, Tiana Character's, LeNorris LaMoute's, Dosuld Pierre's, Shirleen Thales', Advanced Tax Services, Inc.'s, Genson Financial Group, LLC's, and Character Financial Solutions, LLC's compliance with the terms of any permanent injunction entered against them; and

     Q.     That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: December 14, 2018        MARIA CHAPA LOPEZ
                                  United States Attorney

                                  RICHARD E. ZUCKERMAN
                                  Principal Deputy Assistant Attorney General

                                  DANIEL A. APPLEGATE
                                  ALISON A. YEWDELL
                                  JARED S. WIESNER
                                  SAMUEL P. ROBINS
                                  Trial Attorneys, Tax Division
                                  U.S. Department of Justice
                                  P.O. Box 7238, Ben Franklin Station
                                  Washington, D.C. 20044
                                  Telephone: (202) 353-8180
                                  Fax: (202) 514-6770
                                  daniel.a.applegate@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

MARCGENSON MARC; TIANA CHARACTER; LENORRIS LAMOUTE; DOSULD PIERRE; SHIRLEEN THALES; ADVANCED TAX SERVICES, LLC; GENSON FINANCIAL GROUP, LLC; et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Broward
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel Applegate, U.S. Dept. of Justice, Tax Div., (202) 353-8180
P.O. Box 7238 Ben Franklin Stn., Washington, D.C. 20044

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☒ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. sections 7402(a), 7407, and 7408
Brief description of cause:
Suit for permanent injunction barring defendants from preparing tax returns and disgorgement of ill-gotten gains

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/14/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____