**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                   **Case No:   6:18-cv-2147-Orl-37EJK**

**MARCGENSON MARC, TIANA**
**CHARACTER, LENORRIS LAMOUTE,**
**DOSULD PIERRE, SHIRLEEN**
**THALES, ADVANCED TAX**
**SERVICES, INC., GENSON**
**FINANCIAL GROUP, LLC and**
**CHARACTER FINANCIAL**
**SOLUTIONS, LLC,**

        **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

This cause comes before the Court on Plaintiff's Motions for Default Judgment (the "Motions") (Docs. 104, 107), filed April 21 and 27, 2020. Therein, Plaintiff seeks the entry of default judgment against Defendants, Advanced Tax Services, Inc., Genson Financial Group, LLC, Lenorris Lamoute, and Dosuld Pierre. After reviewing the Motions, and the declarations and exhibits submitted in support of same, I respectfully recommend that the Motions be granted.

**I.**       **BACKGROUND**

       **A.  Procedural Posture**

Plaintiff, the United States, filed its Complaint on December 17, 2018 against (1) Marcgenson Marc ("Marc"); (2) Tiana Character ("Character"); (3) Lenorris Lamoute ("Lamoute"); (4) Dosuld Pierre ("Pierre"); (5) Shirleen Thales ("Thales"); (6) Advanced Tax Services, Inc. ("Advanced Tax Services"); (7) Genson Financial Group, LLC ("Genson Financial"); and (8) Character Financial Solutions, LLC ("Character Financial"). (Doc. 1.) Plaintiff

alleges, in general, that Defendants prepared false federal income tax returns for personal profit. (*Id.* ¶ 1.) Specifically, the 84-page Complaint asserts four claims against Defendants, seeking: (1) an injunction under 26 U.S.C. § 7407 (Count I); (2) an injunction under 26 U.S.C. § 7408 (Count II); (3) an injunction under 26 U.S.C. § 7402(a) (Count III); and (4) disgorgement under 26 U.S.C. § 7402(a) (Count IV). (Doc. 1.) Essentially, these claims were brought with the aim of barring Defendants from preparing tax returns and from owning and operating a tax preparation business, and to disgorge any ill-gotten gains that they received for the preparation of false tax returns. (*Id.*)

The case has been resolved as to Defendants Marc, Thales, Character, and Character Financial, as each has reached stipulated agreements for permanent injunctions and judgments or the Court has dismissed the remaining claims pursuant to agreement between the parties. The Court entered a stipulated permanent injunction against Marc on January 1, 2020, which resolved Counts I, II, and III of the Complaint. (Doc. 88). The Court directed entry of judgment against Marc in the amount of $710,191.55 on March 19, 2020, which resolved Count IV. (Docs. 100, 101.) The Court entered a stipulated permanent injunction against Thales on April 4, 2020, which resolved Counts I, II, and III and dismissed Count IV. (Doc. 103.) The Court entered a stipulated permanent injunction against Tiana Character and Character Financial Solutions, LLC on March 26, 2019, resolving Counts I, II, and III of the Complaint against both parties. (Doc. 49.) The Court directed entry of judgment against Character in the amount of $77,927.84 on February 24, 2020, resolving Count IV of the Complaint. (Docs. 93, 94.) The United States consented to dismissal of Count IV of the Complaint against Character Financial, and the Court dismissed Count IV as to Character Financial on March 4, 2020. (Docs. 95, 96.)

Plaintiff has filed the present Motions for default judgment against the remaining Defendants in this case: Advanced Tax Services, Genson Financial, Lamoute, and Pierre. (Docs.

104, 107). The Motions are each accompanied by supporting declarations and exhibits. No responses have been filed, and the time to do so has expired.

### B. Factual Allegations Deemed Admitted as to Advanced Tax Services, Genson Financial, Lamoute, and Pierre[1]

Advanced Tax Services is a tax return preparation business. (Doc. 1, ¶ 10.) On or about February 3, 2012, Marc incorporated Advanced Tax Services in Florida. (*Id.* ¶ 11.) On November 27, 2013, Marc, identifying himself as the "Owner, CEO" of Advanced Tax Services, amended the officers and directors of Advanced Tax Services to name Genson Financial as the president, secretary, and treasurer of Advanced Tax Services. (*Id.*) The Annual Report that Marc, as "Owner" of Advanced Tax Services, filed on April 6, 2018, also identifies Genson Financial as the president, treasurer, and secretary of Advanced Tax Services. (*Id.*) Advanced Tax Services' business address is 5212 W. Colonial Dr., Orlando, FL 32808. (*Id.*)

On November 25, 2013, Marc and two other individuals incorporated Genson Financial in Florida. (*Id.* ¶ 12.) According to the amended Annual Report that Marc, as Manager, filed on June 13, 2018, Marc is the sole manager of Genson Financial, and its business address is 5212 W. Colonial Dr., Orlando, FL 32808. (*Id.*) Advanced Tax Services and Genson Financial operated up to eight tax preparation stores in Gainesville, Orlando, Eatonville, Kissimmee, Pensacola, and Sanford, Florida. (*Id.* ¶¶ 13–14.) Advanced Tax Services and Genson Financial employ individuals who prepare tax returns for compensation. (*Id.* ¶ 16.)

Defendants, Lamoute and Pierre, have prepared tax returns for compensation at Advanced Tax Services since at least 2015. (*Id.* ¶¶ 7–8.) Defendants prepare tax returns to generate bogus

---

[1] Defendants are deemed to have admitted all well-pled allegations of the complaint. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009); *see also* Fed. R. Civ. P. 8 (b)(6).

refunds for customers, enabling them to charge high fees and maximize profits at the expense of the United States Treasury and their customers. (*Id.* ¶ 32.) Many of Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. (*Id.* ¶ 33.) Customers often have no knowledge regarding what can legally be claimed as a credit or deduction on their tax returns or that Defendants prepared and filed false tax returns on their behalf. (*Id.*)

Defendants make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds. (*Id.* ¶ 34.) Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. (*Id.*) These fees are all deducted from the customer's tax refund, often without the customer being told the amount Defendants actually charged for preparing the tax return. (*Id.*) Defendants draft tax returns that request a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. (*Id.* ¶ 35.) Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by Defendants. (*Id.*)

Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC"), often based on fabricated business income and expenses, bogus or improperly claimed dependents, and false filing status. (*Id.* ¶ 37.) The EITC is a refundable tax credit available to certain low-income working people. (*Id.* ¶ 38.) The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. (*Id.*) Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the Treasury. (*Id.*)

Defendants falsified information to claim the maximum EITC for customers. (*Id.* ¶ 41.) For example, to bring the customer's reported earned income within the "sweet spot" for the EITC,

and depending on a customer's actual income, Defendants inflated or fabricated business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income, in order to obtain the maximum EITC. (*Id.*)

Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers, obligating the preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. (*Id.* ¶ 43.) Defendants failed to comply with the due diligence requirements. (*Id.* ¶ 46.)

Defendants prepare tax returns reporting non-existent businesses on bogus Form Schedule C. (*Id.* ¶ 47.) On some of these returns, Defendants report substantial business income, but little or no expenses. (*Id.*) On other returns, Defendants report substantial expenses, but little or no income. (*Id.*) The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability. (*Id.* ¶¶ 48–52.)

Defendants also claim false itemized deductions on Form Schedule A to fraudulently reduce customers' taxable income. (*Id.* ¶ 92.) Defendants prepare tax returns for customers that make false claims for unreimbursed employee business expenses on Form Schedule A, particularly for purported business miles driven by customers. (*Id.* at ¶¶ 92–94.)

Further, Defendants prepare and file federal tax returns on which they improperly claim false or fraudulent fuel tax credits. (*Id.* ¶ 136.) The fuel tax credit is available only to taxpayers who operate farm equipment or other off-highway business vehicles. (*Id.*) The fuel tax credit does not apply to passenger cars or vehicles that are registered to drive on public highways. (*Id.*) Defendants claim the fuel tax credit for fabricated and non-qualifying fuel purchases. (*Id.* ¶¶ 136–140.)

Defendants prepare tax returns on which they falsely report the amount of taxes withheld from customers' income far in excess of the taxes actually withheld as reported on Forms W-2 issued to the customers by their employers. (*Id.* ¶ 155.) Defendants disregard the federal tax withholdings reported on the Form W-2 and instead report a far larger amount on the tax return. (*Id.* ¶ 157.) By falsely claiming that a larger amount of tax was withheld from customers' income, Defendants falsely claim a larger refund of taxes allegedly withheld. (*Id.*) Defendants often report that a customer received wages or Household Help ("HSH") income,[2] and that taxes were withheld from these reported wages or HSH income, when, in fact, the customer did not receive any wages or HSH income and, as a result, no taxes were withheld. (*Id.* ¶ 158.) Defendants then claim a bogus refund of taxes purportedly withheld from non-existent wages or HSH income that Defendants fabricated. (*Id.*)

Defendants also claim bogus education expenses for customers who did not attend college and had no qualifying education expenses, and falsely claim refundable education credits on customers' tax returns to generate a larger refund. (*Id.* ¶ 177.)

Defendants' customers are charged unconscionably high tax preparation fees, mostly through

---

[2] Household Help income is paid to individuals typically hired to perform household work. (*Id.* ¶ 42.)

added, deceptive fees, which are often charged without customers' knowledge. (*Id*. at ¶¶ 185–192.)

Finally, Defendants fail to provide customers with copies of their completed tax returns. (*Id.* ¶ 193.) Title 26 U.S.C. § 6107(a) requires that a tax return preparer to "furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature." (*Id.* ¶ 194.)

The undersigned finds that the Complaint contains numerous specific examples of false or fraudulent tax returns prepared by Defendants, which caused harm to the customers and to the United States. These practices harm the customers because Defendants prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes. (*Id.* ¶ 226.) Consequently, customers' tax returns substantially understate their correct tax liabilities after paying high fees to have their tax returns prepared. (*Id.* ¶ 228.) As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest. (*Id.*) Further, Defendants' conduct harms the United States by causing lost tax revenue. (*Id.* ¶ 227.)

## II.    STANDARD

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. Fed. R. Civ. P. 55(b)(2). The mere entry of a default by the Clerk does not, in itself, warrant the Court's entering a default judgment. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Rather, a defaulted defendant is only deemed to have admitted the plaintiff's well-pled allegations of fact. *Id.* "Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action

and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (emphasis in original).

"Once liability is established, the court turns to the issue of relief." *Enpat, Inc. v. Budnic,* 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." *Id.* (citing Fed. R. Civ. P. 55(b)(2).) Where all the essential evidence is of record, an evidentiary hearing on damages is not required. *SEC v. Smyth,* 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

## III.   DISCUSSION

### A. Jurisdiction

Advanced Tax Services and Genson Financial Group, LLC, were served on December 21, 2018. (Docs. 9, 10.) They initially retained counsel and answered the Complaint (Doc. 28), but subsequently, the Court struck their Answer after the Court permitted their counsel to withdraw and they failed to obtain new counsel. (Docs. 84, 85, 86.) As Advanced Tax Services and Genson Financial Group appeared and never contested service of process, the undersigned finds that service of process was perfected on these two entities.

Lamoute and Pierre were served on December 22, 2018. (Docs. 11, 12.) Lamoute was served personally and accepted service for Pierre as co-resident. (*Id.*) Neither appeared in this action, and the Clerk entered default against them on February 8, 2019. (Docs. 38, 39). Because service of process on them complied with federal procedural rules regarding service of process on an individual, Fed. R. Civ. P. 4(e)(2), the Court also finds service of process on them was proper.

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345, as well as 26 U.S.C. § 7402(a). The Court has personal jurisdiction over Advanced Tax Services and Genson Financial because they appeared and litigated this action without contesting personal jurisdiction. S*ee* Fed. R. Civ. P. 12(h)(1); (Doc. 1, ¶¶ 10–11; Doc. 28.) The Court has personal jurisdiction over Lamoute and Pierre because they reside in Florida and are thus subject to suit in Florida. (Doc. 1, ¶¶ 7–8).

### B.  Liability

#### 1.  Count I - The United States is entitled to an injunction under 26 U.S.C. § 7407.

Title 26 of the U.S. Code, Section 7407, provides for injunctive relief against a "tax return preparer" who engages in 1) conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, or 2) other fraudulent or deceptive conduct that substantially interferes with the administration of the internal revenue laws. 26 U.S.C. § 7407(b)(1)(A), (D). Under § 7407, the government must show: "(1) that the defendant is an 'income tax return preparer' within the meaning of IRC § 7701(a)(36); (2) that he engaged in conduct described in § 7407(b)(1)(A)-(D); and (3) that injunctive relief is appropriate to prevent the recurrence of such conduct." *U.S. v. Prater*, No. 8:02-CV-2052-T-23MSS, 2005 WL 2715401, *5 (M.D. Fla. 2005). Once the government establishes any of the penalty conduct or other violations enumerated in § 7407, it need only also demonstrate "that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7407(b)(2). Where, as here, the conduct is continual or repeated, the Court may enjoin a return preparer from preparing any federal tax returns if it finds that a narrower injunction would be insufficient to prevent further interference with the administration of the internal revenue laws. *Id.*

##### a.  Defendants are tax return preparers under 26 U.S.C. § 7701(a)(36).

A "tax return preparer" is "any person who prepares for compensation, or who employs one

or more persons to prepare for compensation, any return of tax imposed by this title or any claim for refund of tax imposed by this title." 26 U.S.C. § 7701(a)(36)(A). Advanced Tax Services and Genson Financial employ others to prepare tax returns for compensation. (Doc. 1, ¶¶ 10–14, 16.) Further, Lamoute and Pierre prepare tax returns for compensation. (*Id.* ¶¶ 7–8, 16.) Thus, Defendants are tax return preparers within the meaning of § 7701.

### b. Defendants engaged in penalty conduct under §§ 6694 and 6695 as well as other fraudulent or deceptive conduct.

Sections 6694(a) and (b) of the Internal Revenue Code provide for penalties against tax return preparers who understate a customer's tax liability based on unrealistic positions, or due to the preparer's willful, reckless, or intentional disregard of rules and regulations. 26 U.S.C. §§ 6694(a), (b). As detailed in the Complaint, Defendants repeatedly violated §§ 6694(a) and (b) by preparing and employing preparers who prepare tax returns containing phony credits and deductions, including false claims for the fuel tax credit, Earned Income Tax Credit, fake Schedule C business income and expenses, and bogus Schedule A deductions. (Doc. 1, ¶¶ 10–14, 16, 37–41, 43–82, 92–154.) Such conduct has given rise to a permanent injunction under 26 U.S.C. § 7407. *See, e.g.*, *United States v. Sonibare*, 504 F. Supp. 2d 566, 572 (D. Minn. 2007); *United States v. Baxter*, 372 F. Supp. 2d 1326, 1327–30 (M.D. Ala. 2005).

Further, Plaintiff alleges that Defendants repeatedly and continually violated § 6695(b) and § 6695(c) by failing to sign tax returns that they prepare and by failing to report an identifying number of the tax return preparer or the employer on a tax return that the preparer or an employee prepares. (Doc. 1, ¶ 243.) Defendants also repeatedly and continually violated § 6695(g) by deliberately fabricating claims on customers' tax returns and disregarding the EITC due diligence requirements. (*Id.* ¶¶ 37–41, 43–46.)

Further, Defendants substantially interfered with the administration of the internal revenue

laws. Their customers were not reporting their correct tax liabilities, not paying taxes they may owe, and were receiving refunds in amounts to which they were not entitled. (*Id.* ¶¶ 226–227.) Defendants attempted to conceal their misconduct and the false claims they make on tax returns from the government and their customers, who are frequently given an incomplete (if any) copy of their completed tax return. (*Id.* ¶¶ 193–195.) This widespread deceptive conduct supports injunctive relief. *See United States v. Musin*, 953 F. Supp. 2d 944, 967–69 (S.D. Iowa 2011).

### c. A permanent injunction is the only way to stop Defendants from continuing their filing of fraudulent tax returns.

As detailed above, Defendants' business is based on claiming high refunds by fabricating deductions and claims so that they can charge high fees, which are subtracted from the customers' inflated refunds. Defendants' preparation of tax returns making false or fraudulent claims and disregard of the law demonstrates the need for a permanent injunction barring them from acting as tax return preparers. *See United States v. Pugh*, 717 F. Supp. 2d 271, 299 (E.D.N.Y. 2010). A narrower injunction, barring only violations of §§ 6694 and 6695, would be ineffective.

Relevant factors to consider for issuance of an injunction include:

> the gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transaction[s]; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations.

*United States v. Kaun*, 827 F.2d 1144, 1149–50 (7th Cir. 1987).

Here, the gravity of the harm is severe. Defendants and their employees make false claims on tax returns to obtain bogus refunds from the Treasury. (Doc. 1, ¶¶ 32–36, 185–192.) Defendants, who hold themselves out to the public as tax professionals, are presumed to be familiar with the Internal Revenue Code. *See United States v. Venie*, 691 F. Supp. 834, 839 (M.D. Pa. 1988). The

fabrication of claims on tax returns is a clear and intentional disregard of the law. Plaintiff asserts that an order barring only specific conduct will have no effect. Defendants will disregard the order, further attempt to conceal their actions, find new ways to assist with tax return preparation, or find new phony claims to report on returns to skirt the language of a limited injunction. Any of these actions would force the government again to devote resources to curtailing their behavior. And Defendants are unable to provide the Court with any assurance they would obey the law in light of their default. To protect the public and the United States, the undersigned recommends that Defendants not be allowed to prepare tax returns, or own, manage, or invest in any tax return preparation business, and that injunctive relief under § 7407 is appropriate.

### 2.    Count II - The United States is entitled to an injunction under 26 U.S.C. § 7408.

Title 26 of the U.S. Code, Section 7408, provides that injunctive relief is proper where a defendant engaged in "specified conduct" and where the court determines "that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7408(b). "Specified conduct" includes any conduct subject to penalty under 26 U.S.C. § 6701. *Id.* § 7408(c)(1); *United States v. Miner*, No. 6:10-cv-1873-Orl-41DAB, 2014 WL 7361829, at *4–5 (M.D. Fla. 2014). Section 6701 imposes a penalty on any person who: (1) aids, assists, or advises with respect to the preparation or presentation of any portion of a tax return, claim or other document; (2) knows or has reason to know that such portion will be used in connection with a material matter arising under federal tax law; and (3) knows that such portion (if used) would result in an understatement of another person's tax liability. 26 U.S.C. § 6701(a). Violations of § 6701 include illegal conduct perpetrated by subordinates, as well as knowing of, and not attempting to prevent, such conduct. *Id.* § 6701(c).

The Government has presented evidence, beyond mere inaccuracies in tax returns, sufficient to show that Defendants knowingly and deliberately stated inaccurate amounts on tax returns in

order to maximize their customers' tax refunds, by among other things, (1) claiming bogus fuel tax credits, (2) preparing bogus Schedules A and C, and (3) bypassing EITC due diligence requirements. (Doc. 1, ¶¶ 37–41, 43–82, 92–154, 196–225.) These actions are intended to illegally boost customer refunds, from which Defendants collect their fees. Because the phony claims reduce customers' tax liabilities, they relate to a "material matter." *Warner v. United States*, 726 F. Supp. 1287, 1290 (S.D. Fla. 1989). Defendants know these actions understate customers' liabilities, as Defendants need to generate a bogus, inflated refund to subtract their inflated fees.

Once the government shows that Defendants engaged in conduct subject to penalty under § 6701, the Court may issue an injunction under § 7408 if such relief is appropriate to prevent recurrence of that conduct. 26 U.S.C. § 7408. As discussed above, injunctive relief is appropriate and a narrower injunction would be insufficient. Thus, the undersigned recommends the issuance of an injunction under § 7408.

### 3. Count III - The United States is entitled to an injunction under 26 U.S.C. § 7402.

Title 26 of the U.S. Code, Section 7402(a), grants district courts broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). The authority provided under § 7402(a) is "in addition to and not exclusive of any and all other remedies" available to enforce the internal revenue laws. *Id.* The statute manifests "a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957). Thus, it allows for injunctions even where other remedies are available.

This broad grant of authority allows courts "to enjoin interference with tax enforcement even when such interference does not violate any particular statute." *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984). The "decision to issue an injunction under § 7402(a) is

governed by the traditional factors shaping the district court's use of the equitable remedy." *Id.* at 1301. "It is sufficient under § 7402 for the Government to prove a pattern of gross negligence or recklessness, so long as injunctive relief is 'necessary or appropriate for the enforcement of the internal revenue laws.'" *United States v. Stinson*, 239 F.Supp.3d 1299, 1318-19 (M.D. Fla. 2017), *aff'd*, 729 F. App'x 891 (11th Cir. 2018) (quoting § 7402(a)). Under the traditional equitable factors, an injunction may issue where a party demonstrates

> 1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

### a. The United States has shown that it has suffered irreparable injury.

Plaintiff has demonstrated that it has suffered irreparable harm. (Doc. 1, ¶¶ 226–234, 256–258.) Defendants have a well-documented history of preparing fraudulent tax returns over multiple years at multiple locations. The admitted, well-pled allegations show how Defendants reported false claims on customers' tax returns without the customers' knowledge. (*Id.* ¶¶ 10–14, 16, 32–184, 196–225.) Defendants did not review completed returns with customers and they charged unconscionable fees, often without customers' knowledge. (*Id.* ¶¶ 32–34, 185–195.)

Defendants' stores filed thousands of false tax returns, the Treasury issued refunds based on the false claims made on the returns, and Defendants subtracted their fees from the bogus refunds. The irreparable harm thus includes not only the loss of millions of dollars to the Treasury, but also fraud against Defendants' low-income customers, injury to law-abiding return preparers who lost customers to Defendants, and the undermining of public confidence in the tax law. (*Id.* ¶¶ 226–234.) Additionally, Defendants' activities will cause "further depletion of Government resources" by way

of customer audits. (*Id.* ¶ 230); *United States v. Music Masters, Ltd.*, 621 F. Supp. 1046, 1058 (W.D.N.C. 1985). Plaintiff asserts that the IRS does not have the capability to review, much less audit, every tax return filed by Defendants. Thus, the government cannot recover all of the tax losses associated with the widespread fraud from Defendants' past or future conduct, as this would result in a "maze of lawsuits" against each of Defendants' customers. (Doc. 1, ¶¶ 227, 230–231, 234); *Music Masters*, 621 F. Supp. at 1058 (internal quotation marks omitted).

### b.  The United States has no adequate legal remedy.

Section 7402 provides courts with the power to enter equitable relief, including injunctive relief and disgorgement, as necessary for the administration of the internal revenue laws. 26 U.S.C. § 7402(a). The United States has no other adequate remedy at law because Defendants will continue their pattern of preparing and submitting false tax returns. (Doc. 1, ¶ 256.) The only means to stop the Treasury's loss from the issuance of bogus tax refunds as a result of Defendants' fraudulent tax return preparation is injunctive relief.

### c.  The injuries to the United States and Defendants' customers outweigh any harm to Defendants by preventing further illegal conduct.

While a permanent injunction barring Defendants from preparing tax returns or being involved with a return preparation business may impair their "livelihood," their business model fundamentally depends upon defrauding customers and the government, which does not provide a legitimate source of income. While Defendants will be denied the ability to prepare tax returns, "the harm to them is substantially outweighed by the harm to which their clients are subjected by having fraudulent tax returns prepared in their names." *U.S. v. Buddhu*, No. 3:08-cv-0074 (CFD), 2009 WL 1346607, at *5 (D. Conn. May 12, 2009).

**d.   An injunction benefits the public interest by protecting the Defendants' potential customers from the consequences of the Defendants' misconduct.**

Finally, a permanent injunction would serve the public interest. It would protect the public from Defendants and spare their customers from having false tax returns prepared in their names and facing potential IRS audit. *See id.* A permanent injunction would protect the public interest. (Doc. 1, ¶¶ 234, 258.) Every bogus refund claimed by the Defendants not only depletes the Treasury, but also requires the expenditure of additional resources to investigate and attempt their recovery.

**4.   Count IV - The United States is entitled to disgorgement.**

Section 7402(a) of the Internal Revenue Code grants district courts broad authority to issue orders and judgments "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This includes the remedy of disgorgement. *Stinson*, 239 F. Supp. 3d at 1326. "To be entitled to disgorgement, the plaintiff need only produce a reasonable approximation of the defendant's ill-gotten gains." *Id.* at 1327. "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (internal quotation marks omitted). The court's power to order disgorgement is not unlimited: "[i]t extends only to the amount the defendant profited from his wrongdoing." *Id.* Thus, there must be a "'relationship between the amount of disgorgement and the amount of ill-gotten gain.'" *Id.* (quoting *C.F.T.C. v. Sidoti*, 178 F.3d 1132, 1137 (11th Cir. 1999)).

The well-pled allegations of the Complaint demonstrate that Defendants unjustly enriched themselves. Thus, disgorgement is appropriate. Where, as here, a tax return preparer falsely reports business income or losses on Form Schedule C, or fabricates unreimbursed employee business expenses on a Form Schedule A, the Court may order the preparer to disgorge the fees received for

the preparation of tax returns exhibiting these claims. *Stinson*, 239 F. Supp. 3d at 1329. Likewise, where a preparer falsifies claims for the EITC to generate bogus refunds, the Court may order the preparer to disgorge the fees received for returns claiming the EITC. *United States v. Barwick*, No. 6:17-cv-35-Orl-18TBS, 2018 WL 1135414, at, *2 (M.D. Fla. Feb. 27, 2018), *report and recommendation adopted*, 2018 WL 1115701 (M.D. Fla. Feb. 27, 2018).

### a. Advanced Tax Services and Genson Financial

Advanced Tax Services and Genson Financial received fees for the preparation of false or fraudulent tax returns prepared at Advanced Tax Services. Plaintiff's disgorgement request is limited to the fees generated from preparing the federal income tax returns on which these Defendants, and those acting at their direction, repeatedly made false claims to unlawfully increase the customers' refunds. As demonstrated in the Complaint, these Defendants and their employees systematically and routinely prepared tax returns falsely claiming:

    (A) bogus fuel tax credits;

    (B) unreimbursed employee business expenses ("EBE") on Forms Schedule A; and

    (C) self-employed business expenses (with no reported business income) in amounts equal to or greater than $4,000 on Forms Schedule C.

The fees that these Defendants received for tax returns that fall into these categories are therefore directly connected to their well-documented pattern of gross misconduct in preparing such returns. Accordingly, the amounts of the fees disbursed to these Defendants for tax returns making these claims is a reasonable approximation of their ill-gotten gains.

According to IRS records of tax returns filed by Advanced Tax Services and third-party records showing the tax preparation fees disbursed for those tax returns, for tax returns filed at the stores in Gainesville, Florida and on Colonial Drive in Orlando, Florida, Advanced Tax Services

and Genson Financial received ill-gotten tax preparation fees for the three categories of tax returns described above in the amounts of $236,871.15 in 2015, $163,569 in 2016, $161,317 in 2017, and $122,178 in 2018, for a total of $683,935.15. For tax returns filed at all other Advanced Tax Services stores, Advanced Tax Services and Genson Financial received ill-gotten tax preparation fees in the amounts of $163,653 in 2015, $94,311 in 2016, and $4,600 in 2018, for a total of $262,564. Ten percent of $262,564 totals $26,256.40.[3] Thus, Plaintiff seeks disgorgement of $710,191.55 for Advanced Tax Services and Genson Financial, jointly and severally.[4]

The fees for the tax returns in the categories above prepared at the Advanced Tax Services stores located in Gainesville and on Colonial Drive in Orlando are shown in the table below:

**Table 2(b)**

| Filing Year | CAT. A: Returns with Fuel Tax Credit | CAT. B: Returns Claiming EBE on Schedule A | CAT. C: Returns Reporting No Income and > $4,000 in Expenses on Schedule C | Total Fees for Categories A, B, and C by Year |
|---|---|---|---|---|
| 2015 | $48,969.15 | $48,033 | $139,869 | $236,871.15 |
| 2016 | $48,515 | $28,719 | $86,335 | $163,569 |
| 2017 | $28,717 | $73,593 | $59,007 | $161,317 |
| 2018 | $9,334 | $102,610 | $10,234 | $122,178 |
| Total by Category | $135,535.15 | $252,955 | $295,445 | GRAND TOTAL: $683,935.15 |

(Reinken Decl., Doc. 104-2, at ¶¶ 9, 15–16; Exs. AC, AD, AE, AF, and AG.)

The total fees, and ten percent of the total fees for tax returns prepared at Advanced Tax Services stores other than the stores located in Gainesville, Florida and on Colonial Drive in Orlando,

---

[3] Plaintiff seeks 10% of these fees consistent with Marc's deposition testimony on what he personally received from tax returns prepared at these Advanced Tax Services stores. (Doc. 104 at 12, n.2.)

[4] Additionally, Marc stipulated to be jointly and severally liable for any judgment entered against his entities, Advanced Tax Services, Inc., and Genson Financial Group, LLC. (Doc. 99 at 2–3.) Therefore, for consistency of judgments, Plaintiff seeks to have Advanced Tax Services and Genson Financial disgorge the fees that they received from the Advanced Tax Services stores in Gainesville, Florida and on Colonial Drive in Orlando, Florida, and 10% of the fees from all other Advanced Tax Services stores for the preparation of tax returns falling in Categories A, B, and C, identified above.

Florida for the tax returns filed in Categories A–C are shown in the table below:

**Table 3(b)**

| Filing Year | CAT. A: Returns with Fuel Tax Credit | CAT. B: Returns Claiming EBE on Sch. A | CAT. C: Returns Reporting No Income and > $4,000 in Expenses on Sch. C | Total Fees for Cat. A, B, and C | 10% of the Total Fees for Cat. A, B, and C by Year |
|---|---|---|---|---|---|
| 2015 | $110,032 | $18,185 | $35,436 | $163,653 | **$16,365.30** |
| 2016 | $55,109 | $15,275 | $23,927 | $94,311 | **$9,431.10** |
| 2017[3] | $0 | $0 | $0 | $0 | $0 |
| 2018 | $550 | $2,050 | $2,000 | $4,600 | **$460** |
| **Total by Category** | **$165,691** | **$35,510** | **$61,363** | **$262,564** | **GRAND TOTAL: $26,256.40** |

(Doc. 104-2, ¶¶ 9, 18; Exs. AC, AD, AE, and AG.)

There is no overlap of tax returns in Categories A, B, and C as identified in the tables above; each category contains separate and distinct tax returns and related fees. (Doc. 104-2, ¶¶ 11, 15–20.)

### b. Lamoute and Pierre

Lamoute and Pierre received a portion of the tax preparation fees associated with the preparation of tax returns from 2015 through 2018. Plaintiff's disgorgement request is limited to income related to preparing federal income tax returns that fall into at least one of the following four discrete categories of returns on which these Defendants repeatedly made false claims as necessary to unlawfully increase the customers' refunds. The evidence shows that these Defendants systematically and routinely prepared tax returns falsely claiming:

(A) bogus fuel tax credits;

(B) unreimbursed employee business expenses ("EBE") on Forms Schedule A;

(C) self-employed business expenses (with no reported business income) in amounts equal to or greater than $4,000 on Forms Schedule C; and

(D)  the Earned Income Tax Credit.

The amounts that these Defendants received for preparing tax returns that fall into these categories are directly connected to their well-documented pattern of gross misconduct in preparing such returns. Accordingly, the percentage of the salaries or commissions paid to these Defendants

commensurate with the percentage of tax returns that they prepared making these false claims is a reasonable approximation of their ill-gotten gains.

According to IRS records of tax returns identifying Lamoute and Pierre as the paid preparers, and Forms 1099 and third-party bank records showing the amounts paid to Lamoute and Pierre, Lamoute received ill-gotten gains for the four categories of tax returns described above in the amounts of $35,662.81, while Pierre received ill-gotten gains for the four categories of tax returns described above in the amount of $51,191.96.

For Lamoute, the amount Plaintiff requests is supported as follows:

**Table 1(a): Tax Returns Identifying Lamoute as the Paid Preparer**

| Filing Year | Total Returns Filed[2] | CAT. A: Returns with bogus Fuel Tax Credits | CAT. B: Returns Claiming EBE on Form Schedule A (but not claiming fuel tax credits) | CAT. C: Returns with Sch. C reporting no income but $4,000 or more in expenses Returns Claiming the EITC (but not claiming fuel tax credits or EBE on Sch. A) | CAT. D: Returns Claiming the EITC (but not claiming fuel tax credits, Sch. A EBE, or $4,000 or more in expenses, with no income, on Sch. C) | Total Number and Percentage of Tax Returns Falling into Categories A, B, C, and D |
|---|---|---|---|---|---|---|
| 2015 | 106 | 28 | 29 | 1 | 37 | 95 (**89.6%**) |
| 2016 | 175 | 21 | 45 | 0 | 97 | 163 (**93.1%**) |
| 2017 | 202 | 39 | 58 | 7 | 88 | 192 (**95%**) |
| 2018 | 121 | 19 | 61 | 3 | 36 | 119 (**98.3%**) |

(Reinken Decl., Doc. 107-3, ¶¶ 2-8, Exs. G, H, I, and J; Poole Decl., Doc. 107-2, ¶¶ 4-8, Exs. C, D, E, and F.)

**Table 1(b): Income to Lamoute for Tax Returns in Categories A, B, C, and D**

| Filing Year | TOTAL INCOME BY YEAR | PERCENTAGE OF TAX RETURNS FALLING IN CATEGORIES A, B, C, AND D | INCOME IN PROPORTION TO TAX RETURNS FALLING IN CATEGORIES A, B, C, AND D BY YEAR |
|---|---|---|---|
| 2015 | $8,580 | 89.6% | $7,687.68 |
| 2016 | $4,825 | 93.1% | $4,492.08 |
| 2017 | $11,940 | 95% | $11,343 |
| 2018 | $12,350 | 98.3% | $12,140.05 |
| Total | $37,695 | | **GRAND TOTAL: $35,662.81** |

(Applegate Decl., Doc. 107-1, ¶¶ 3-4, Exs. K, L, M; Marc Dep., Doc. 107-14, 154:3–155:8, 155:22-

156:4; Doc. 107-15.)

For Pierre, the amount Plaintiff requests is supported as follows:

**Table 2(a): Tax Returns Identifying Pierre as the Paid Preparer**

| Filing Year | Total Returns Filed[4] | CAT. A: Returns with bogus Fuel Tax Credits | CAT. B: Returns Claiming EBE on Form Schedule A (but not claiming fuel tax credits) | CAT. C: Returns with Sch. C reporting no income but $4,000 or more in expenses Returns Claiming the EITC (but not claiming fuel tax credits or EBE on Sch. A) | CAT. D: Returns Claiming the EITC (but not claiming fuel tax credits, Sch. A EBE, or $4,000 or more in expenses, with no income, on Sch. C) | Total Number and Percentage of Tax Returns Falling into Categories A, B, C, and D |
|---|---|---|---|---|---|---|
| 2015 | 150 | 45 | 21 | 8 | 70 | 144 (96%) |
| 2016 | 203 | 36 | 38 | 11 | 109 | 194 (95.5%) |
| 2017 | 215 | 44 | 31 | 15 | 120 | 210 (97.6%) |
| 2018 | 72 | 5 | 21 | 8 | 36 | 70 (97.2%) |

(Reinken Decl., Doc. 107-3, ¶¶ 2–6, 9–10, Exs. G, H, I, and J; Poole Decl., Doc. 107-2, ¶¶ 4-8, Exs. C, D, E, and F.)

**Table 2(b): Income to Pierre for Tax Returns in Categories A, B, C, and D**

| Filing Year | TOTAL INCOME BY YEAR | PERCENTAGE OF TAX RETURNS FALLING IN CATEGORIES A, B, C, AND D | INCOME IN PROPORTION TO TAX RETURNS FALLING IN CATEGORIES A, B, C, AND D BY YEAR |
|---|---|---|---|
| 2015 | $4,580 | 96% | $4,396.80 |
| 2016 | $15,000 | 95.5% | $14,325 |
| 2017 | $17,036.40 | 97.6% | $16,627.53 |
| 2018 | $15,842.63 | 97.2% | $15,842.63 |
| Total | $52,459.03 | | GRAND TOTAL: $51,191.96 |

(Doc. 107-1, ¶¶ 3–4, Exs. N, O, P; Doc. 107-13.)

Further, there is no overlap of tax returns in Categories A, B, C, and D, as identified in Tables 1(a) and 2(a). (Doc. 107-3, ¶¶ 5–8.)

Accordingly, I respectfully recommend that the proposed disgorgement amounts requested by Plaintiff as to each of the remaining four Defendants be accepted as a reasonable approximation of their ill-gotten gains.

## IV.     RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** Plaintiff's Motion for Default Judgment Against Advanced Tax Services, Inc., and Genson Financial Group, LLC (Doc. 104) as follows:

   a. Enter the proposed permanent injunction against Advanced Tax Services, Inc., and Genson Financial Group, LLC, as submitted by Plaintiff (Doc. 104-4); and

   b. Find that judgment should be entered against Advanced Tax Services, Inc., and Genson Financial Group, LLC, jointly and severally, in the amount of **$710,191.55**.

2. **GRANT** Plaintiff's Motion for Default Judgment Against Lenorris Lamoute and Dosuld Pierre (Doc. 107) as follows:

   a. Enter the proposed permanent injunction against Lenorris Lamoute and Dosuld Pierre, as submitted by the Plaintiff (Doc. 107-16); and

   b. Find that judgment should be entered against Lenorris Lamoute in the amount of **$35,662.81** and against Dosuld Pierre in the amount of **$51,191.96**.

3. **DIRECT** the Clerk of Court to enter judgment accordingly, and thereafter, close the case.

## NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R.

3-1.

Recommended in Orlando, Florida on September 1, 2020.


_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties